GILLESPIE, Chief Justice:
This is an appeal by New South Corporation from a decree. of the Chancery Court of Harrison County awarding judgment to Patrick J. Godley and Anthony J. Casorelli (complainants) for breach of contract, under the terms of which complainants were the exclusive sales agents for lots owned by New South.
Complainants commenced suit in chancery court by attaching defendants’ property. New South was a Louisiana corporation. They alleged that about May 1, 1970, New South entered into an oral contract with complainants to act as sales agents for New South for all lots in Timber Ridge Subdivision in Harrison County, Mississippi. Complainants demanded judgment for two items, $22,902.73 earned commissions, and $64,000 representing loss of profits up to the time of filing the suit and $12,800 per month thereafter on the basis that New South had wrongfully cancelled the sales contract.
New South had been engaged for sometime in the sale of lots with a sales agency organization whose contract was terminated during April, 1970. In late April, 1970, a meeting was had between Jaymar Ad-cock, John A. McCoy, president and secretary respectively of New South, and complainants, and an agreement was reached whereby complainants would be the exclusive sales agents for Timber Ridge lots. During the conversation, Mr. McCoy made notes which, aside from the oral testimony, are meaningless.
The oral contract is very indefinite. Complainants were to receive at least a 35% commission on each sale. When the down payment was 25% or more the commission would be 40%. New South agreed to pay commissions monthly based on sales *309 contracts submitted by complainants. Complainants agreed to bear all expenses of making the sales. An intensive letter writing campaign was started by complainants and their expenses ran about $10,000 monthly. Complainants employed six salesmen. The principal contention between the parties concerns whether New South was liable for commissions when purchasers defaulted on the installment contracts.
The parties operated until August 20, 1970, without any dispute and commissions were paid by New South on a current basis. New South was in financial difficulty after August 20 and complainants contend they had earned about $102,000 in commissions before any further commissions were paid them. New South contended ultimately they owed only about $76,000.
In the fall of 1970, some disagreement began to develop between the parties as to the amount of commissions due. After the dispute arose between the parties and shortly after the first of the year, the sum of $76,000 was paid to complainants but not in full settlement. About $22,000 of the claim was unsettled. New South’s contention was that certain expenses were chargeable to complainants and that New South was entitled to credit for certain commissions where the contracts were in default.
The chancellor found that complainants were entitled to recover $18,853.74 as earned commissions. In addition, he entered judgment for $4,338.55 to compensate complainants for the cost of sales material which they had purchased with the full knowledge of New South that it could be used only in selling Timber Ridge lots, and with knowledge that such materials would be needed only if their contract continued until August, 1971. The court also awarded judgment in favor of complainants in the amount of $9,600.00 for loss of profits during a three-week period when business was interrupted. These amounts totaled $32,792.29. There were agreed credits in favor of New South for $5,831.42, thus reducing the judgment for complainants to the sum of $26,960.87. The chancellor found that the contract was terminable at the will of either party and that reasonable notice for cancellation was given complainants.
I.
The first question is whether the court erred in awarding defendants $18,853.74 as earned commissions. The chancellor awarded judgment for this amount based on his finding that there was no agreement between the parties that New South could charge complainants for commissions previously paid them when the purchaser defaulted on the installment contract. New South contends the agreement was that whenever the full down payment was not paid, or whenever there was default on an installment contract, that New South could charge back against complainants the commission on such defaulted contract less any amount already paid by the purchaser. Both complainants testified positively and unequivocably that there was no agreement for such charge back against their commissions when a purchaser defaulted on the installment contract. The chancellor found that there was no evidence of any such agreement.
We have considered whether New South’s contention was the one adopted by the parties. On November 19, 1970, a letter was written to complainants whereby John A. McCoy, on behalf of New South, claimed credit for three contracts which had been cancelled, and complainants agreed that New South was entitled to credit for these three commissions. However, in reference to this list of defaulted contracts, Mr. McCoy testified that he did not know whether they were defaults in down payments or installments. Complainants concede that if there was a default in the down payment (bad check, for instance) New South was entitled to credit for any commission paid on the transaction. Furthermore, Mr. McCoy, who was *310 the only witness who claimed that New South had the right to charge back commissions on defaulted installment contracts, when pressed for a specific answer to opposing counsel’s questions as to whether a definite agreement was had with complainants, replied equivocably, “I think I can definitely say that, yes.”
With reference to the alleged agreement regarding commissions on defaulted contracts, we cannot say that the chancellor was manifestly wrong.
II.
Complainants, sought recovery of $64,000 for damages for the alleged unlawful termination of the contract on the part of New South. The court found that the contract was terminable by either party at will and that the notice of termination given by New South was reasonable. However, New South permitted complainants to acquire an inventory of sales supplies that could be used only for selling Timber Ridge lots, with the expectation that the sales program would run its course. The chancellor was of the opinion that complainants 1 should recover the cost of this inventory amounting to $4,338.55. The award was justified under the proof.
III.
The next question is whether the chancellor erred in awarding complainants $9,600 for loss of profits during a three-week period when business was interrupted. We hold this was error.
Complainants base their claim to this item of. damage on the ' fact that New South failed to pay them commissions when due. As a result of New South’s failure to make timely payments complainants had insufficient funds to pay Direct Mail Specialists, who cut off complainants’ credit and discontinued their mailing service. Three weeks elapsed before complainants were able to locate another firm which commenced their mailing. Mail service was an indispensable element of complainants’ letter writing promotional project. Complainants introduced into evidence statistics to show that for each 10,000 letters mailed out 100 prospects would visit the development site. Eleven of the 100 prospects would purchase a lot. From these figures complainants calculated the number of sales which would have occurred had the mailing continued.
Ordinarily where a contract to pay money is breached, interest is the measure of damages. 25 C.J.S. Damages § 52 (1966).
On a contract for the mere payment of money the unpaid principal, together with the stipulated or, after maturity, the lawful rate of interest is the measure of damages. It is the invariable measure of recovery in a creditor’s action against his debtor. The failure to pay a debt when due may disappoint the creditor and embarrass him in his affairs and collateral undertakings; he may consequentially suffer losses for which interest is a very inadequate compensation; but they are remote and do not result alone from the default of his debtor. Sutherland on Damages, 4th ed., § 76 at pages 273-274 (1916).
We are not here concerned with a case where the obligation to pay money is special and has other objects than the mere discharge of a debt. Id. § 77.
ON CROSS-APPEAL
Complainants raise several questions on cross-appeal, only one of which requires discussion. Complainants contend that the chancellor erred in not awarding interest on the commissions due on several contracts totaling $18,853.74, for which judgment was awarded. While complainants asked for general relief, the prayer for judgment was specific and did not include a request for interest. Moreover, after the chancellor rendered his written opinion he directed counsel for complainants to prepare a decree. Nowhere did *311 complainants request the chancellor to add interest. The claim for interest in this case is not such that we would be justified in reversing the chancellor on this question. Moreover, there were certain credits which were admittedly due New South totaling $5,831.42, and in addition there was a dispute as to the amount due.
For the reasons stated, that part of the judgment awarding complainants $9,600 for interruption of business is reversed and judgment entered here in favor of New South as to that item. In all other respects the decree of the trial court is affirmed on direct appeal. On cross-appeal the case is affirmed.
Affirmed in part, reversed in part, and rendered on direct appeal. Affirmed on cross-appeal.
PATTERSON, INZER, SUGG and WALKER, JJ., concur.