610 So.2d 290 (1992)
UNIVERSAL LIFE INSURANCE COMPANY
v.
Martha VEASLEY.
No. 07-CA-59316.
Supreme Court of Mississippi.
February 19, 1992.
Rehearing Denied December 31, 1992.
Dissenting Opinion on Denial of Rehearing December 31, 1992.
Leonard B. Melvin, Billie J. Graham, Len Melvin, Melvin & Melvin, Laurel, for appellant.
John M. Deakle, Hattiesburg, Charles G. Blackwell, James M. Brown, Laurel, for appellee.
Paul S. Minor, Minor & Guice, Biloxi, for amicus curiae.
Before HAWKINS, P.J., and ROBERTSON and BANKS, JJ.
Dissenting Opinion by Justice McRae on Denial of Rehearing December 31, 1992.
BANKS, Justice, for the Court:

I
The primary question put to the Court in this matter is whether the failure to honor a claim without justification is a sufficient circumstance to support an award of punitive damages in the absence of evidence *291 that the failure was willful or caused by any thing other than simple negligence, where the claim was honored within seventy-five days of when it was filed and five days of the first written protest of its dishonor. Applying traditional principles governing the award of punitive damages we answer the question in the negative.
This matter is before the Court on appeal from a judgment of the Circuit Court of Jones County reflecting a jury verdict awarding actual damages in the amount of $3552.76 and punitive damages in the amount of $175,000. Universal Life Insurance Company, (Universal) aggrieved by the verdict and judgment, appeals and, in the end, we affirm as to actual damages and reverse and render as to punitive damages.

II
In August 1985, Teretha Veasley (Teretha) purchased a life insurance policy from Regina Battle, an agent of Universal Life Insurance Company. She named her mother, Martha Veasley (Veasley), as the sole beneficiary of the policy. Concomitant with the completion of the application, Teretha paid one premium in the amount of $7.29. Subsequently, she received notice that the policy was approved with a higher risk rating and that premiums would be $10.76. The first premium was due September 18, 1985. That premium was never paid. The policy provided for a thirty-one (31) day grace period in which it would remain in effect following the due date of a premium not paid.
Teretha died in Laurel, Mississippi, on October 18, 1985, as a result of complications from childbirth. Thereafter, Veasley contacted Viola Malone at the Malone Funeral Home in Laurel to make funeral arrangements. She gave the insurance policy in issue to Malone who agreed to file a claim so that the proceeds could be used to pay the funeral bill. She asked that the balance of any monies due be paid to her. At that time, Malone, who coincidentally, is a writing agent for Universal, contacted Universal's main office in Memphis, Tennessee and inquired about coverage. She was informed by a male employee that coverage was in effect, because Teretha died one day within the grace period.
Malone handled all of the paperwork in submitting the claim form. For reasons not fully explained in the record, she did not mail the claim until July 1, 1986, more than eight months after Teretha's funeral. On July 3, 1986, the claim packet was received by Universal. Universal had two death claims analysts. When this claim came up for review, one of the analysts was out and a death claims clerk was filling in as a replacement. That clerk drew the claim in question. Feeling uncertain about the claim, she consulted the other regular analyst who told her that the claim should be denied because the policy had lapsed.
The death claims clerk handling the matter then turned it over to another clerk for communication of the denial of coverage. For bases unexplained in the record, that clerk mailed a notice of denial of coverage on July 16, 1986, indicating that coverage was denied because the policy had not been in force the required period of time and because there was "no value in the policy." Although these reasons are applicable to some policies and claims thereon, they had no application whatever to the policy and claim in question.
Later in July, Malone inquired as to the status of the claim and a copy of the denial form was mailed to her. Nothing in the record reflects that any other contact was made with Universal's claims office until Charles Blackwell (Blackwell), an attorney consulted by Veasley, sent a letter in September of 1986 questioning the reasons for denial and inquiring as to whether there was a problem with the policy.
There was testimony concerning several contacts with Universal selling agents, between the initial denial and the Blackwell letter. Darnell Milsaps (Milsaps), Veasley's son-in-law, made contacts with Regina Battle, the agent who took Teretha's application, and Jack Morgan, another Universal selling agent, in an effort to determine why the claim was not paid. The record does not indicate what, if anything, was done by *292 them. Veasley called the Universal office in Laurel about the problem. She testified that a gentleman, whom she originally identified as Willis McDonald, came to see her. At trial, she retracted her identification of McDonald, who had been made a defendant in this case. In any event, she maintained that the now unidentified gentleman came to her home to discuss the problem and called back the following day to indicate that he had been unsuccessful in changing the decision.
Finally, Milsaps, on behalf of Veasley, retained Blackwell who wrote the letter alluded to above. Upon reading the letter, Redmond, Universal's claims department manager, had the file pulled. He reviewed the file and realized it should have been paid. Immediately after reading the file, Redmond attempted to call Blackwell. It was after five o'clock and there was no answer. He did speak to Blackwell the following day, September 12, and informed him the claim had been wrongfully denied and that it would be paid promptly. True to the word of its representative, on September 26, 1986, Universal mailed a check in the amount of $1458.00 to the Malone Funeral Home and the balance due under the $4500.00 policy to Veasley.
The check mailed to the funeral home was cashed. Veasley consulted her lawyer. At some point she endorsed the check but rather than negotiate it, John Deakle, who had apparently been associated to represent her by this time, tore the check in half and mailed a copy of it to Universal together with a letter asserting a bad faith claim. This litigation ensued.
Veasley's complaint alleged tortious breach of contract, fraud in the inducement, and breach of fiduciary duty. In addition to contractual and punitive damages, she sought extra-contractual damages. Veasley alleged that she suffered emotional distress as a result of Universal's (mis-)handling of her claim. She testified that Universal's refusal to pay her claim caused her worry, nervousness, and depression. She also claimed she had sleepless nights and little or no tolerance for children or noises. She stated she was taking tranquilizers for her problems. There was no medical testimony presented during the trial and Veasley admitted that she had some of the same problems before and after her daughter's death.
Trial was had, at the end of which, the jury was instructed to find for the plaintiff in the amount of $3,052.76, which was the balance due on the contract after the funeral expenses had been paid. The jury, on its own accord, pursuant to instructions allowing it to determine the issues, awarded Veasley $500.00 for actual extra-contractual damages and $175,000.00 in punitive damages.
McDonald had been dismissed at the close of the plaintiff's case. Universal brings this appeal assigning as error the failure of the court to give an instruction directing the jury to find for defendant if the initial failure to pay was a result of clerical error, granting an instruction allowing punitive damages and granting an instruction allowing extra contractual damages. Because we find that this record does not support an instruction allowing punitive damages we pretermit discussion of the issue of the "clerical error" instruction.

III
The primary issue here is whether or not this record supports Veasley's claim for punitive damages. Universal contends the record is devoid of evidence which supports a punitive damage instruction. Veasley, argues to the contrary.
Since the seminal case of Standard Life Insurance Company v. Veal, 354 So.2d 239 (Miss. 1978), we have been called upon on numerous occasions to address bad-faith denial by an insurance company in paying claims, and the propriety of assessing punitive damages[1]. The standard *293 employed in such cases has been enunciated repeatedly, such that citation to authority is not necessary. Suffice it to say that before punitive damages may be recovered from an insurer, the insured must prove by a preponderance of evidence that the insurer acted with (1) malice, or (2) gross negligence or reckless disregard for the rights of others. Weems v. American Security Ins. Co., 486 So.2d 1222, 1226-27 (Miss. 1986); Aetna Casualty & Surety Co. v. Day, 487 So.2d 830, 832 (Miss. 1986).
The trial court is responsible for reviewing all evidence before it in order to ascertain whether the jury should be permitted to decide the issue of punitive damages. Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172, 1183-1184 (Miss. 1990). If the insurer had a legitimate or arguable reason to deny payment of claim, then the trial judge should refuse to grant a punitive damage instruction. Pioneer Life, at 929. Arguable reason is defined as "nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to heightened level of an independent tort." Id. at 930.
Notwithstanding an absence of an arguable basis for the denial or breach of a policy claim, submission of the punitive damages issue may not be warranted. Andrew Jackson, 566 So.2d at 1185, quoting Pioneer Life, 513 So.2d 927. Indeed, "the fact that an insurance company lacks a legitimate or arguable reason for denying a claim does not automatically lead to the conclusion that the issue of punitive damages should be submitted to the jury." Pioneer Life, 513 So.2d at 930 (emphasis in original).
For example, the punitive-damages issue should not be submitted to the jury in cases involving an insurer who wrongfully denied a claim because of `clerical error or honest mistake'  though `objectively speaking, [error or mistake does not constitute an] arguable reason for failure to honor a just claim.'
Andrew Jackson, 566 So.2d at 1185-86, quoting Weems, 486 So.2d at 1227.
As the proof in the instant case does not reflect the existence of malice, on these facts the standard to be applied is that of gross negligence or reckless disregard. The burden of proof is on the plaintiff to show that the conduct in question rises to the level necessary to justify the imposition of punitive damages. There is an absence of evidence establishing that the error here was anything more than clerical. The evidence simply does not rise to the level of gross negligence. Although the reasons given by the company for denying Veasley's claim were undeniably erroneous, the error was corrected promptly after Universal received a non-threatening letter from Veasley's attorney inquiring about the denial of payment of the claim. There is no evidence suggesting that this type of oversight happened on a regular basis. Finally, nothing in the record indicates that a letter from one other than an attorney would not have produced the same result.
We have unhesitantly upheld punitive damage awards where the facts justified them. For example, in Mutual Life Insurance Company of New York v. Wesson, 517 So.2d 521 (Miss. 1987), beneficiaries of life insurance policy brought suit against insurer and its brokers for bad-faith refusal to pay the value of a life insurance policy. They sought both actual and punitive damages. At the conclusion of the trial, the lower court granted a peremptory instruction in favor of the agents on the claim against them by the beneficiaries. The jury returned a verdict for the beneficiaries against the insurance company in the amount of $87,136.00 in actual damages and $8,000,000.00 in punitive damages. Insurer appealed. We held that the issue of punitive damages was properly submitted to the jury.
There, in contrast to the instant case, the insurer's contention that it is guilty of only simple negligence was amply rebutted. Evidence from its files showed that it deliberately *294 failed to correct computer coding which erroneously denied automatic premium loans (APL) to policy holders resulting in erroneous denials of coverage. Moreover, the insurance company continued to deny coverage through the time that it filed its answer, after it was on notice of the APL error.
In Travelers Indemnity Co. v. Wetherbee, 368 So.2d 829 (Miss. 1979), we held that a punitive damage instruction was proper and that the evidence was sufficient to support the verdict for damages thereunder arising from the intentional withholding of the contents coverage, a gross breach, the equivalent of an independent tort. There, contents coverage admittedly due was withheld for more than eight unexplained months while negotiations continued over other coverages. The insurance company had been warned that the insured was suffering economically and this Court concluded that, in the absence of any other explanation, the unreasonable delay after demand allowed a fair inference that it was deliberate and motivated by financial gain. Here there was no protracted delay. No motivation to affect other coverage settlement is in evidence.
In Standard Life Ins. Co. of Indiana v. Veal, 354 So.2d 239 (Miss. 1984), the defendant failed to honor the legitimate claim filed following the death of plaintiff's wife and there was no reason whatever to justify its action. Insured executed a brokerage contract with a finance company to negotiate a loan for insured. The finance company, acting as agent for insured, issued a decreasing life insurance policy on the lives of insured and his wife. The finance company issued a certificate of insurance to insured. Insured's wife died and proof of death was provided to insurance company in accordance with the terms of the policy. Insurer refused to honor the claim because the wife's name did not appear on the debt instrument. Insured's attorney wrote the company requesting that it review the claim and forward the payment. No response to this letter was made or received. The attorney wrote another letter. Insurer replied stating that it did not receive the earlier letter and refused to pay the claim. Trial ensued. After suit was filed, insurer offered to pay the face amount of the policy. Insured stated that he never received insurer's offer. After trial, the jury awarded plaintiff damages in the amount of $26,008.00  $1,008.00 in actual damages, $25,000.00 in exemplary damages. We upheld this award, stating that "[t]his case demonstrates the necessity of awarding punitive damages when an insurance company refuses to pay a legitimate claim, and bases its refusal to honor the claim on a reason clearly contrary to the express provisions of its own policy."
Here again, there is evidence of protracted delay even to the point of a lawsuit before an offer to honor the claim is made. In the case before us, Universal determined to honor the claim within hours of receiving the first written inquiry questioning the denial.
National Life and Acc. Ins. Co. v. Miller, 484 So.2d 329, is another case in which we upheld an award of punitive damages for insurance bad faith on facts readily distinguished from those before us today.
Without doubt, a mistake was made by Universal. The record is bereft of an explanation why such a mistake was made. The totality of circumstances, however, does not suggest more than an unfortunate episode of a failure of competence. The burden of proof rests with the plaintiff. The defense is not required to prove that its negligence did not constitute gross negligence. In all circumstances, the burden is on Veasley to prove that it did. On this record, we are compelled to conclude that no rational jury could find, based on a preponderance of the evidence, that the acts of the defendant were willful or grossly negligent, as opposed to an inadvertent calculation due to inattention and substitute personnel handling the claim.
We conclude that no punitive damage instruction should have been given. Having so decided, we need not discuss the propriety of the court's refusal of instruction D-1 and we turn to the award of extra contractual damages.

*295 IV
Universal contends the court erred in granting instruction P-6 which stated,
Damages is the word which expresses in dollars and cents the injuries sustained by the plaintiff. The damages to be assessed by a jury for personal injury cannot be assessed by an [sic] fixed rule, but you are the sole judges as to the measure of damages in any case. Should your verdict be for the plaintiff, you may consider the following factors in determining the amount of damages to be awarded as may be shown by a preponderance of the evidence.
(1) The type of injuries to the plaintiff, if any.
(2) Past, present and future mental anguish, if any.
(3) In arriving at the amount of the award, if any, you may consider mental pain, and mental anguish and suffering of the plaintiff, if any.
This is not an instruction which would ordinarily be permissible in an action for breach of a contract to pay money. The court's purpose in establishing a measure of damages for breach of contract is to put the injured party in the position where she would have been but for the breach. Leard v. Breland, 514 So.2d 778, 782 (Miss. 1987); Mississippi Power Co. v. Harrison, 247 Miss. 400, 152 So.2d 892 (1963). Where a contract to pay money is breached, interest is the measure of damages. New South Corporation v. Godley, 301 So.2d 307, 310 (Miss. 1974).
We have traditionally held that damages for mental anguish and emotional distress cannot be considered in the absence of a finding of an independent intentional tort separate from the breach of contract. Aetna Casualty and Surety Co., 487 So.2d at 835; State Farm Fire and Casualty Co. v. Simpson, 477 So.2d 242 (Miss. 1985). Bad faith is considered such an independent tort. Pioneer Life, 513 So.2d at 931 (Robertson, J., concurring); Blue Cross & Blue Shield v. Maas, 516 So.2d 495 (Miss. 1987). Here, the evidence supports only a finding of mistake, nothing more than simple negligence. Simple negligence is not such an independent tort that would support extra-contractual damages. See, e.g., Andrew Jackson, 566 So.2d at 1187, quoting Simpson, 477 So.2d 242 and Pioneer Life, 513 So.2d at 930, ("[A]s a matter of law, `ordinary torts, the product of forgetfulness, oversight, or the like,' do not `rise to the heightened level of an independent tort' which warrant imposition of punitive-damages liability"). Id.
Some justices on this court have suggested that extra-contractual damages ought be awarded in cases involving a failure to pay on an insurance contract without an arguable reason even where the circumstances are not such that punitive damages are proper. Pioneer Life at 932. (Sullivan, J., concurring, joined by D. Lee, Prather and Robertson, JJ.). Applying the familiar tort law principle that one is liable for the full measure of the reasonably foreseeable consequences of her actions, it is entirely foreseeable by an insurer that the failure to pay a valid claim through the negligence of its employees should cause some adverse result to the one entitled to payment. Some anxiety and emotional distress would ordinarily follow, especially in the area of life insurance where the loss of a loved one is exacerbated by the attendant financial effects of that loss. Additional inconvenience and expense, attorneys fees and the like should be expected in an effort to have the oversight corrected. It is no more than just that the injured party be compensated for these injuries.
In the instant case, while not voluminous, evidence existed to support Veasley's contention that the refusal of Universal Life to pay the claim caused her worry, anxiety, insomnia, and depression. Additionally, she experienced difficulty in coping with daily life and children, her grandchildren, in particular. Veasley stated that she did not have any of these emotional problems prior to her contact with Universal. Thus, the amount awarded by the jury for Veasley's emotional distress was no more than just compensation for her claims which, although contested, were presumably credited by the jury.

*296 V
Under the facts in the case at bar, there was no evidence of wanton or gross conduct by the insurance company toward Veasley, therefore the court erred in submitting the issue of punitive damages to the jury. We reverse and render as to punitive damages. In all other respects, including the assessment of actual damages caused by the anxiety resulting from delay without an arguable reason is the judgment is affirmed.
AWARD OF PUNITIVE DAMAGES IS REVERSED AND RENDERED; AWARD OF ACTUAL DAMAGES IS AFFIRMED.
ROY NOBLE LEE, C.J., and HAWKINS and DAN M. LEE, P.JJ., PRATHER, ROBERTSON, SULLIVAN and PITTMAN, JJ., concur.

ON PETITION FOR REHEARING
Petition for Rehearing Denied.
DAN M. LEE, P.J., and SULLIVAN and McRAE, JJ., would grant.
ROBERTS, J., not participating according to Supreme Court Internal Rules.

DISSENTING OPINION ON PETITION FOR REHEARING
McRAE, Justice, dissenting:
After a careful review of the record and the applicable Mississippi law, I disagree with the majority's refusal to grant the petition for rehearing. In affirming the actual damages awarded to the Appellee and reversing the punitive damages award, the majority found that there was insufficient evidence to show that insurer's original refusal to honor a claim was any more than simple negligence or a mere clerical error. However, there is substantial evidence in the record which suggests otherwise and supports the jury's award of punitive damages. The record reveals that each of the company's claims analysts had reviewed Veasley's file and refused to pay the claim without a giving valid reason, despite its original denial on a basis completely contrary to the language of the policy provisions. Universal Life's system appears to be even more "black" than those we considered in Mutual Life Insurance Company of New York v. Wesson, 517 So.2d 521 (Miss. 1987) and Bankers Life and Casualty Co. v. Crenshaw, 483 So.2d 254 (Miss. 1985). I see no difference between training a claims analyst to categorically deny claims and programming a computer to do the same. Accordingly, I dissent.
After her daughter's death on October 18, 1985, Martha Veasley turned the paperwork for the claim over to Viola Malone, a Universal Life Insurance Company agent and the proprietress of the Malone Funeral Home, which handled Teretha's burial arrangements and thus had been assigned part of the benefits claimed. Ms. Malone contacted the home office and ascertained that the policy was in, indeed, in effect at the time of Teretha's death. Although Teretha died in October, 1985, Ms. Malone did not send the physician's Proof of Loss Form for Universal Life nor have it completed until April 15, 1986. Further, she did not submit the claim form to Universal Life until July 1, 1986. Although Ms. Malone testified that this was the first claim she had ever processed, there is no explanation in the record for the eight month lapse in time before the claim was filed.
Ms. Malone's negligence in failing to timely file the claim was compounded by the actions of the claims analysts at Universal Life. The notification of the denial of the claim indicated two reasons for its rejection. It indicated that the policy contract had not been in force for the required time period and further, that the policy had no value. However, the Universal Life Claims Manager testified that the insurer "never" denies death claims for the first reason. He further testified that the second reason was inappropriate and never used to deny death claims. He explained that at the time the claim was received, a substitute clerk, who normally calculated the cash surrender value of life insurance policies, conducted the review. However, the record indicates that the substitute *297 clerk had worked in the death benefit claims area on prior occasions and further, that she discussed the denial of the claim with a regular claims analyst before rejecting it.
After learning of the denial of the claim on July 16, 1987, Ms. Malone contacted Universal Life several times by telephone. Her inquiries were not followed up by an investigation; rather, when the vacationing claims analyst returned, she also denied the claim and merely mailed Ms. Malone another copy of the notification of denial of the claim on July 25, 1986. It was not until the Veasley's attorney, Charles Blackwell, contacted Universal Life in early September, 1986 that the insurer looked into its reasons for denying the claim, and ultimately, paid it.
In "bad faith" cases, we have placed a heavy burden on the claimant to show by a preponderance of the evidence the existence of "bad-faith-plus" before punitive damages may be awarded. Andrew Jackson Life Insurance Company v. Williams, 566 So.2d 1172, 1188 (Miss. 1990); Wesson, 517 So.2d at 528. Recovery is contingent upon a finding of an independent tort, separate from the breach of contract. Aetna Casualty & Surety Co. v. Day, 487 So.2d 830, 835 (Miss. 1986).
I recognize that we have stated that mere clerical errors, oversights and honest mistakes alone do not rise to the heightened level of an independent tort so as to warrant the imposition of punitive damages. Pioneer Life Insurance Co. v. Moss, 513 So.2d 927, 930 (Miss. 1987); Employers Mutual Casualty Co. v. Tompkins, 490 So.2d 897, 903 (Miss. 1986); Weems, 486 So.2d at 1227; Consolidated American Life Insurance Co. v. Toche, 410 So.2d 1303, 1306 (Miss. 1982) However, the record in the case sub judice reveals actions which amount to more than simple negligence or clerical error. In its exposition of the facts of the case, the majority glosses over the actions of the Universal Life agents and claims analysts in handling the claim, both before and after it arrived at the home office. Looking at the totality of the circumstances, however, I am persuaded that the actions of Universal Life and its agents show gross negligence and a disregard for the rights of others. To begin with, Universal Life's agent, Viola Malone, upon whom Mrs. Veasley relied upon to file the claim, waited nearly eight months before so doing. The claim was denied for reasons Universal Life's own Claims Manager testified are never given for death benefit claims, to wit: those reasons given by the claims analyst for denying the claim were totally contrary to the provisions in Veasley's policy. Finally, despite inquiries from their agent, Ms. Malone, prompted only by numerous inquiries from Mrs. Veasley, Universal Life did nothing to investigate the denial of the claim until it heard from the Veasley's attorney. Clearly there is more involved here than a simple clerical error or mere oversight.
We have upheld awards for punitive damages where, as an element of the bad faith issue, as agent's representations to the insured are contrary to the insurer's subsequent denial of the claim. Mississippi Farm Bureau Mutual Insurance Co. v. Todd, 492 So.2d 919, 935 (Miss. 1986). In the case sub judice, Mrs. Veasley relied on Viola Malone's representation that she had contacted Universal Life and ascertained that Teretha's death occurred within the grace period, and thus the coverage was in effect. Further, she relied on Ms. Malone's representations that she would take care of filing the claim. Yet for eight months, Ms. Malone did nothing.
Under the Unfair Claims Practices Act promulgated by the National Insurance Commissioners Conference in 1976 and adopted by the majority of insurance companies, it was agreed that claims such as this would be paid within thirty days and if a claim was to be denied, the insured would be notified in writing within forty five days. This has not been recognized in this state, however, under Mississippi law, an insurance company has a clear duty to promptly and adequately investigate a claim before denying it. Eichenseer v. Reserve Life Insurance Co., 682 F. Supp. 1355, 1366 (N.D.Miss. 1988); Life and Casualty Insurance Co. v. Bristow, 529 So.2d 620, 623 (Miss. 1988). At a minimum, it *298 must 1) check to see if the provision relied upon has been invalidated by a state or federal court, 2) interview its employees and agents to determine whether they have any knowledge relevant to the claim in question, and 3) when the claim is related to the insured's health, make a reasonable effort to obtain all medical information relevant to the claim. Eichenseer, 682 F. Supp. at 1366 (citations omitted). In Guy v. Commonwealth Life Insurance Co. 698 F. Supp. 1305, 1315 (N.D.Miss. 1988), where the insurance company failed to make any attempt to interview its agent to determine why questions on the application had been left blank before denying the insured's claim on the basis of "a pre-existing condition," the court upheld a punitive damages award of $141,000.00, explaining that:
A finding of malice on Commonwealth's part is not supported by the record. Nevertheless, the motive behind the insurer's actions was clear: it intended to save money by denying a claim. Moreover, such actions were done with wanton disregard for the right of the insured in that the insured was assumed to have lied when a question on the application was left unanswered. Impairment of the plaintiff's ability to manage her affairs was a clearly foreseeable result of the denial. The use of an insurer's superior position to wrongfully deny a claim offends the public sense of justice and propriety.

Guy, 698 F. Supp. at 1315 (emphasis added).
Universal Life quite promptly denied Mrs. Veasley's claim within two weeks after it was finally submitted. However, I question seriously the adequacy of any investigation undertaken prior to the swift denial of the claim. There is no evidence in the record to suggest that Universal investigated the claim prior to rejecting it through contacting either Ms. Malone or the agent who originally sold the policy to Teretha, Regina Battle. The failure to meet this very simple prong of the minimum requirements test articulated in Eichenseer suggests to me that Universal's denial of Mrs. Veasley's claim was more than a simple clerical error or mere oversight.
As the majority points out, Universal's Claims Manager realized immediately that the claim had been wrongfully denied after he was contacted by Mrs. Veasley's attorney in September, 1986. The claim was then "promptly" paid, but only after several reviews by the company's primary claims analysts and an eight month delay. What does it take to have an independent tort? Granted, in most cases where we have affirmed punitive damages, the delay in investigating the wrongful denial and paying the benefits owed has been longer than the two month period in the case sub judice. In Blue Cross & Blue Shield of Mississippi Inc. v. Mass, 516 So.2d 495 (Miss. 1987), we affirmed a punitive damages award of $100,000.00 to a claimant whose claim had been denied because of a "clerical error." In that case, Blue Cross did not begin its investigation of the denial of the claim until suit was filed. Blue Cross & Blue Shield, 516 So.2d at 496. Although it only took two and one half weeks to discover the source of the error, payment of the claim was not remitted to Maas for another six weeks. Id. However, to focus solely on the number of weeks it took to resolve and pay the claim and to predicate the propriety of punitive damages on the length of time involved misses the point entirely. The record indicates that Universal Life did nothing when contacted by its own agent, Viola Malone, except to send her a copy of the notification that the claim had been denied. As in Blue Cross & Blue Shield, the point is that Universal Life did nothing and probably would have continued to do nothing until Mrs. Veasley's son-in-law secured an attorney on her behalf, who, in turn, contacted the insurer and demanded an explanation for the denial of the claim. That, to me, suggests not only an abuse of the insurance company's superior bargaining position, but also a complete and total disregard for the rights of others.
In the past, we have upheld punitive damages awards against insurance companies under facts no more egregious than those before us today. In Continental Casualty Co. v. Garrett, 161 So. 753 (Miss. 1935), this Court affirmed a punitive damages *299 award to a claimant who had been called "a liar" by his insurance agent. Where the insurer denied a credit life insurance claim because the deceased's name was not listed with that of her husband on the covered loan contract, but the contract defined the "insured obligor" as "the principal or first signatory on a contract of indebtedness and his or her spouse by marriage," we concluded that the company had refused the claim "on a reason clearly contrary to the express provisions of its own policy" and affirmed a punitive damages award. Standard Life Insurance Co. v. Veal, 354 So.2d 239 (Miss. 1978). In National Life & Accident Insurance Co. v. Miller, 484 So.2d 329 (Miss. 1985), we affirmed a punitive damages award where the insurer, having concluded that the claimant had falsified statements about the insured child's congenital heart condition, denied a health insurance claim, when, in reality, the company's agent was responsible for the misrepresentations.
The failure of Viola Malone to file promptly Mrs. Veasley's claim, after representing to her that the coverage was in effect and that she would handle the filing; the failure of the insurance company to adequately investigate the claim before summarily denying it on a basis contrary to the explicit language of the policy; and the failure of the insurer to investigate the denial of the claim upon the inquiry of its agent all add up to more than simple negligence, mere oversight or clerical error. It smacks of reckless disregard for the rights of others and gross negligence. Finally, when an insurer forces the insured to retain an attorney to make the company comply with the provisions of its own policy, the company should be liable for attorneys fees and costs. We require this to be done only when punitive damages are allowed; however, as in this case, once the fees and costs are paid, the claimant is left with nothing. Accordingly, I dissent.
NOTES
[1] Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172 (Miss. 1990), Life & Cas. Ins. Co. of Tennessee v. Bristow, 529 So.2d 620 (Miss. 1988), Stamps v. Estate of Watts, 528 So.2d 812 (Miss. 1988), Mutual Life Insurance Company of New York v. Wesson, 517 So.2d 521 (Miss. 1987), Pioneer Life Insurance Company of Illinois v. Moss, 513 So.2d 927 (Miss. 1987), Southern United Life Ins. Co. v. Caves, 481 So.2d 764 (Miss. 1985), National Life & Accident Insurance Co. v. Miller, 484 So.2d 329 (Miss. 1984), State Farm Fire & Casualty Company v. Simpson, 477 So.2d 242 (Miss. 1985), Reserve Life Ins. Co., et. al v. McGee, 444 So.2d 803 (Miss. 1984).