03/25/97

IN THE COURT OF APPEALS

OF THE

STATE OF MISSISSIPPI

NO. 95-CA-00777 COA

MIKE A. STEVENSON AND PATRICIA H. STEVENSON

APPELLANTS

v.

LIFE INVESTORS INSURANCE COMPANY OF AMERICA

APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. ELZY JONATHAN SMITH JR.

COURT FROM WHICH APPEALED: COAHOMA COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANTS:

NANCY ALLEN WEGENER

ATTORNEY FOR APPELLEE:

DAN H. FAIRLY

NATURE OF THE CASE: INSURANCE

TRIAL COURT DISPOSITION: STEVENSONS AWARDED LOST BENEFITS, INTEREST, AND EMOTIONAL DISTRESS DAMAGES - DIRECTED VERDICT GRANTED ON PUNITIVE DAMAGES

MANDATE ISSUED: 8/22/97


EN BANC:

DIAZ, J., FOR THE COURT:


Mike and Patricia Stevenson sued Life Investors Insurance Company in the Circuit Court of Coahoma County for damages arising out of the breach of a medical insurance contract. Following a jury trial, the court awarded the Stevensons $2,292.60 in lost benefits, $790.95 in interest and $1,200.00 for emotional distress. The Stevensons and Life Investors appeal the judgment of the lower court. The Stevensons cite the following as errors of the trial court: (1) the trial court erred in denying Appellants' motion for leave to amend complaint; (2) the court erred in directing a verdict in favor of the Appellee on the issue of punitive damages, and (3) the court erred in failing to grant the Appellants' motion for attorney fees. Life Investors cross-appeal citing the following errors: (1) the trial court erred in allowing the issue of extra-contractual damages to be submitted to the jury, and (2) the evidence was insufficient to allow the jury to consider the issue of emotional damages. Finding no merit to any of the above issues, we affirm.


## FACTS

Life Investors issued a medical policy to Mike Stevenson which became effective on October 15, 1992. Patricia Stevenson, spouse of the primary policy holder, was also a named insured. This policy contained a "pre-existing condition" clause which described a pre-existing condition as:

[a]ny condition for which the insured Person, during the 12 month period preceding the effective date of the Insured Person's coverage: (1) received medical treatment, prescribed drugs, diagnosis, or consultation; or (2) underwent management and care for the purpose of combating an injury or sickness.


In September 1992, Patricia was treated for gastritis by Dr. Anne Brooks. In January and February 1993, Patricia was treated by several physicians for lower abdominal pain, pelvic pain and a positive hemocult which sometimes indicates cancer. Following a battery of tests by three physicians, Patricia was diagnosed with gastritis and anal papillitis. Patricia submitted a claim for payment of medical expenses which Life Investors denied pursuant to its pre-existing condition clause. Based on this

denial, the Stevensons filed their complaint against Life Investors on August 16, 1993, in the amount of $49,900.00. The Appellants asked for punitive as well as compensatory damages. The Appellants filed a motion to amend their complaint on September 9, 1994, to increase the amount of damages to $2,860,000.00. The trial judge denied their request.

The trial in the matter was held on March 20, 1995. At the close of the Appellants' case, Life Investors moved for a directed verdict on the issues of punitive damages and extra contractual damages. The court granted the directed verdict on the punitive damages issue, but allowed the issue of extra contractual damages to be submitted to the jury. The jury awarded the Stevensons $2,292.60 in lost benefits, $790.95 in interest and $1,200.00 for emotional distress.

## DISCUSSION

## APPELLANT'S ISSUES

### 1. Did the Trial Court Err in

### Denying Appellants' Motion to Amend?

On September 9, 1994, the Stevensons sought to amend their complaint, changing the amount of damages from $49,900.00 to $2,860,000.00. The Appellants alleged that through the discovery process they had determined that Life Investors' conduct was far more egregious than they originally believed and the motion to amend was delayed by the Appellee's failure to promptly comply with their discovery requests.

Mississippi Rule of Civil Procedure 15(a) provides that leave to amend pleadings should be freely allowed by the trial court "when justice so requires." M.R.C.P. 15(a) (1994). This determination, however, is left to the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of discretion. *Frank v. Dore*, 635 So. 2d 1369, 1375 (Miss. 1994) (citations omitted).

In the instant case, the Appellants' proposed amended complaint simply seeks to increase the amount of punitive damages sought at trial. A review of the record does not reflect extended delay during discovery by Life Investors as alleged by the Stevensons. Thus, we find that the trial judge did not abuse his discretion in denying Appellants' motion for leave to amend.

### 2. Did the Trial Court Err in Granting Life Investors'

### Motion for Directed Verdict on Punitive Damages?

Punitive damages are granted in the nature of punishment for the intentional wrongdoing of the defendant and as a deterrent to others who may consider committing similar offenses thereby protecting the public from such warrantless conduct. *State Farm Fire and Cas. Co. v. Simpson*, 477

So. 2d 242, 249 (Miss. 1985) (citations omitted). Such conduct must rise to a level of "malice or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule." *Fowler Butane Gas Co. v. Varner*, 141 So. 2d 226, 233 (Miss. 1962). Concerning the issue of punitive damages in connection with breach of contract, the Mississippi Supreme Court has further explained:

Punitive damages are not recoverable for the breach of a contract unless such breach is attended by intentional wrong, insult, abuse or such gross negligence as to consist of an independent tort.

*Progressive Casualty Ins. Co. v. Keys*, 317 So. 2d 396 (Miss.1975).

In the insurance contract context, Mississippi's highest court has stated:

Of course, if an insurance company has a legitimate reason or an arguable reason for failing to pay a claim, punitive damages will not lie . . .

*Standard Life Ins. Co. of Ind. v. Veal*, 354 So. 2d 239, 248 (Miss.1978).

It is the trial court's responsibility to review the evidence presented and determine whether the issue of punitive damages should be submitted to the jury. *See Paymaster Oil Mill Co. v. Mitchell*, 319 So. 2d 652, 657 (Miss.1975). If the evidence reveals a legitimate or arguable reason for the denial of the claim by the insurer, the jury should not be allowed to decide the issue of punitive damages. *Lewis v. Equity Nat'l Life Ins. Co.*, 637 So. 2d 183, 185 (Miss. 1994).

In this second assignment of error, the Stevensons contend that the lower court erred in granting a directed verdict on the issue of punitive damages because Life Investors did not have an arguable reason to deny Patricia's claim. They rely entirely upon the allegation that Dr. Sawyer, the only physician that reviews medical files for Life Investors, failed to properly investigate the claim. They premise this allegation on the fact that Dr. Sawyer did not consult an independent physician, contact any of Patricia's treating physicians, and admitted that Patricia had not had a previous positive hemocult. However, the record reveals that the pain experienced by Patricia prior to the effective date of the policy was substantially the same as the pain for which she was treated in the present action.

In granting the Appellee's motion for directed verdict, the Court stated:

I'm going to grant the motion for directed verdict insofar as punitive damages is concerned. I think there's clearly legitimate and arguable reason throughout the testimony in this case by the plaintiff herself or whoever is the plaintiff in the case but by Mrs. Stevenson herself, in everything she wrote down, she came back to the same thing. She came up with -- of course, going for other things too, but her complaint from the beginning to the end was the same complaint.

"Legitimate or arguable reason" has been defined by the Mississippi Supreme Court as "nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to the level of an independent tort." *State Farm Fire and Cas. Co. v. Simpson,* 477 So. 2d 242, 250 (Miss. 1985).

After reviewing the facts in this case, we conclude that the trial judge correctly granted the Appellee's motion for directed verdict as to punitive damages. At all relevant times, Life Investors had an arguable reason to deny Patricia's claim. Thus, it must follow that if Life Investors had an arguable reason to refuse coverage, the Appellants have not presented sufficient evidence to create a jury issue on whether the Appellee was guilty of intentional wrongdoing to rise to the appropriate level to support a punitive damage award.

## 3. Did the Court Err in Failing to Grant

## the Appellants' Motion for Attorney Fees?

The Appellants' argue that the trial court erred in failing to grant proposed jury instruction P-6 which allowed the jury to determine attorney fees. The proposed jury instruction which was denied by the court read as follows:

Life Investors is liable for the full measure of the reasonably foreseeable consequences of its actions. It is entirely foreseeable by an insurance company that the unjustified failure to pay a valid claim would cause some anxiety and emotional distress as well as inconvenience and expense, including attorney fees.

If you find from the preponderance of the evidence that Life Investors failed to properly investigate Patsy Stevenson's claim and failed to pay the claim without justification and that it was reasonably foreseeable that this failure would cause and did cause Patsy Stevenson anxiety and emotional distress and additional inconvenience and expense, including attorney fees, you may award damages in an amount to be determined by the court.

The court did, however, grant an alternative instruction P-6 which read as follows:

If you find from the preponderance of the evidence that Life Investors failed to pay the claim without an arguable basis or justification, and that it was reasonably foreseeable that this failure would cause and did cause Patsy Stevenson emotional distress, you may award damages in an amount you deem proper.

Pursuant to this instruction, the jury returned an award of $1,200.00 in emotional distress damages. Following the jury verdict, the Stevenson's filed a motion for legal interest and attorney fees, including copies of the employment contract and an itemization of time spent on the case by the Plaintiffs' attorney. The court granted the legal interest, but denied attorney fees. In explaining his ruling, Judge Smith reasoned that although the plaintiffs requested attorney fees in their complaint, they did not present any evidence during the trial concerning the dollar amount of attorney fees and expenses they had incurred.

In a 1992 Mississippi Supreme Court decision, *Universal Life Ins. Co. v. Veasley*, the Court determined that extra contractual damages such as attorney fees were sometimes warranted in cases

where the bad faith of the insurance company was not so egregious as to warrant punitive damages. 610 So. 2d 290, 295 (Miss. 1992) (citing *Pioneer Life Ins. Co. v. Moss,* 513 So. 2d 927, 930 (Miss. 1987)).

We find that the issue of attorneys fees should have been submitted to the jury in this case and the failure to grant an instruction on attorney fees to the jury was erroneous. However, we adhere to the general rule that in order for the Plaintiffs to appeal the trial judge's denial of attorney fees they must make a proffer of the evidence into the record during trial. *See McNamara v. Fulks*, 855 S.W.2d 782, 784 (Ct. App. Tex. 1993)(trial court did not abuse its discretion in denying attorney's fees in the absence of any pleadings or proffer to support such an award.) Unfortunately, the Plaintiffs failed to follow this basic rule of evidence and we decline to award attorney fees without the appropriate information being made a part of the record.

## APPELLEE'S ISSUES

### 1. Did the Trial Court Err in Allowing

### the Issue of Extra-Contractual Damages

### to be Submitted to the Jury?

Life Investors first argues that the issue of extra-contractual damages should not have been submitted to the jury. This argument is premised on the fact that the trial judge previously determined punitive damages were not appropriate in this case because he found that the Appellee had an arguable reason to deny the claim based on the similarity of Patsy Stevenson's complaints of pain before and after the commencement of coverage. Life Investors contends that the language used by the *Veasley* court prevents the award of extra-contractual damages in the case at bar. Additionally, the Appellee cites the Fifth Circuit Court of Appeals case of *Hans Const. Co. v. Phoenix Assur. Co. of New York* where the court applied Mississippi law and allowed extra-contractual damages only in cases where the insurance company could show no arguable reason for failure to pay. 995 F. 2d 53, 55 (5th Cir. 1993).

Concerning the issue of extra-contractual damages, the Fifth Circuit concluded as follows:

The holding in Veasley appears to be limited to damages for mental anguish occasioned by failure to pay an insurance claim in those instances when the insurer lacks even an arguable basis for denial. The Veasley majority noted that "[s]ome justices on this court have suggested that extra-contractual damages ought to be awarded in cases involving a failure to pay on an insurance contract without an arguable reason even where the circumstances are not such that punitive damages are proper." In summarizing the results of the opinion, the court held: "the assessment of actual damages caused by the anxiety resulting delay without an arguable reason is . . . affirmed."

Making our best Erie prognostication, we conclude in light of Veasley that Mississippi will allow extra-contractual damages for failure to pay on an insurance policy only when there is no arguable reason for such failure. An arguable reason, therefore, shields the insurance company from liability for

both punitive damages and extra-contractual damages.

995 F. 2d 53, 55 (5th Cir. 1993).

The Mississippi Supreme Court did not intend the narrow interpretation of *Veasley* as applied by the Fifth Circuit. Prior to *Veasley*, extra-contractual damages could not be considered without a gross or willful wrong such as to impose punitive damages. *See State Farm Cas. Ins. Co. v. Simpson*, 477 So. 2d 242, 252-53 (Miss. 1985). However, *Veasely* opened the door for an award of extra-contractual damages without the necessity of punitive liability. In cases where the actions of the insurer do not rise to the punitive damage level, it is still reasonable to allow the jury to determine whether the actions of the insurer rise to such a level as to warrant extra-contractual damages such as attorney fees and emotional distress. In such a situation, the jury should be allowed to make an independent determination, without the necessity of a punitive damages instruction, as to any additional liability of the insurance company so long as the evidence warrants such a finding. By allowing the jury to assess emotional damages and attorney fees, the insured will be more fully compensated for his claim and will realize the full benefit of insurance coverage without the costly, chilling effect of unnecessary litigation.

2. Was the Evidence Insufficient to Allow

the Jury to Consider Emotional Distress Damages?

In the proceedings below, the jury determined that Patsy Stevenson experienced emotional distress from Life Investors' refusal to pay her claim. The jury returned an award of $1200.00 to compensate Mrs. Stevenson on this claim. A review of the record reveals that evidence of emotional distress was produced at trial by the testimony of Mr. and Mrs. Stevenson. The testimony revealed that she suffered headaches and worried about paying her doctor bills. Although the evidence was sparse, the jury found that Patsy Stevenson suffered emotional damage resulting from Life Investors' failure to pay her claim and awarded her compensation. We will not disturb the jury's award where evidence exists in the record to support it.

**THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT AWARDING LOST BENEFITS IN THE AMOUNT OF $2,292.60, PLUS INTEREST, $1,200.00 EMOTIONAL DISTRESS DAMAGES AND DIRECTING A VERDICT ON THE ISSUE OF PUNITIVE DAMAGES IS HEREBY AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANTS.**

**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, HERRING, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**