United States Court of Appeals,

Fifth Circuit.

No. 94-60306.

Earnest GREER, Plaintiff-Appellee Cross-Appellant,

v.

Hardye BURKHARDT, et al., Defendants,

United States Fidelity & Guaranty Insurance Company, Defendant-Appellant Cross-Appellee.

July 20, 1995.

Appeal from the United States District Court for the Southern District of Mississippi.

Before REAVLEY, KING and WIENER, Circuit Judges.

REAVLEY, Circuit Judge:

Ernest Greer won a judgment against his insurance carrier, United States Fidelity & Guaranty Insurance Company (USF & G), for $225,000 in mental anguish damages. Greer claimed that USF & G failed to defend a personal injury suit brought against him, resulting in a default judgment. On appeal, USF & G argues, *inter alia,* that Mississippi law does not allow for mental anguish damages under the circumstances presented here. Greer cross-appeals, arguing that the district court erred in denying his claim for punitive damages. We reverse and render.

FACTUAL BACKGROUND

Greer had a homeowner's policy with USF & G. USF & G agreed under the policy to provide a defense to covered personal injury claims. It required Greer to "forward to us every notice, demand, summons or other process" relating to an accident or occurrence

1

under the policy. Greer obtained the policy through a local agent, Pickens Insurance Agency.

In 1986 Nora Levy fell when she slipped on a toy at Greer's residence. Greer gave notice of this occurrence to a Pickens employee, Hardye Burkhardt. A USF & G claims adjuster investigated this claim, meeting with Greer and Levy, and obtaining a recorded statement from Greer. Several months later, the adjuster closed the file on this incident, because of "lack of interest" by both the claimant and the insured.

Some four years later, on February 21, 1990, Don Barrett, Levy's attorney, wrote to Greer, informing him that a suit against Greer had been filed. A copy of the unfiled complaint, with cause number left blank, was enclosed with the letter. The letter advised Greer that "[y]ou should go ahead and give this copy of the Complaint to your insurance company, and they will handle the matter."

There is no dispute that Greer took the unfiled complaint to Burkhardt. Greer testified that Burkhardt told him she "would take care of it." Burkhardt testified that she made a copy of the complaint for her file and mailed a copy to USF & G. USF & G witnesses, however, testified that USF & G never received the copy in the mail. USF & G contends that the letter forwarding the copy of the unfiled complaint was lost in the mail.

On February 22, 1990, Levy's suit was filed, and Greer was served with process in March. Greer testified that he took a copy of the filed complaint to Burkhardt, while Burkhardt testified that

she had no further contact with Greer until 1991.

In May of 1990 a default judgment was entered in state court against Greer for $225,000. An amended judgment was later entered, reducing the amount of the judgment to $90,000.

On February 6, 1991 Levy's attorney notified Greer of the default judgment by letter. The letter stated that Levy intended to execute on Greer's property and garnish his wages unless arrangements were made to pay off the judgment by February 11, 1991. On February 11, 1991, Levy's attorney filed suggestions for writ of garnishment on several banks and an execution on judgment. The sheriff's office tagged certain pieces of Greer's farm equipment on February 21, 1991. Greer also received a letter from his bank notifying him that his bank account, with a balance of $1137, had been seized. On February 22, 1991, Greer filed this suit.

Burkhardt testified that neither she nor USF & G knew of the default judgment until February 20, 1991, when Greer's attorney notified her of the judgment, and that she immediately contacted USF & G's claims office. Greer testified that he notified Burkhardt of the default judgment shortly after receiving the February 6 letter from Levy's attorney. On February 27, USF & G paid the judgment and obtained a release and cancellation of the judgment.

The district court, after hearing the evidence, instructed the jury that USF & G was negligent, in effect directing a verdict on liability. It refused Greer's request for a jury instruction on

3

punitive damages, and asked the jury to determine actual damages for mental anguish. The jury awarded $225,000 in mental anguish damages. The jury was also instructed to award $1500 in attorney's fees, an amount to which the parties had stipulated as reasonable.

DISCUSSION

A. *Mental Anguish Damages*

USF & G complains that the evidence presented by Greer does not support an award of actual damages for mental anguish under Mississippi law. The evidence on mental anguish consisted solely of Greer's testimony. When asked to describe his reaction to the February 6, 1991 letter, Greer stated that "it was frustrating. It was humiliating. I felt as if someone had shoveled bricks in my stomach. I had problems resting, and I—it was just a humiliating situation. I knew I didn't have $90,000 to pay." When asked to describe his "reaction to the sheriff seizing your property and your reaction to the Bank of Yazoo County giving up your accounts," he testified: "It was embarrassing. It was embarrassing. It was the most embarrassing thing that had ever happened to me in my life."

In this diversity case we face the vexing problem of determining how the Mississippi Supreme Court would decide this issue. After carefully reviewing recent Mississippi cases on mental anguish damages, we find ourselves in agreement with USF & G.

In *Strickland v. Rossini,* 589 So.2d 1268 (Miss.1991), the plaintiff, who had purchased a home, sued an inspection company and

4

its employee for negligently representing that the home was free of termites. The jury awarded $62,000 in actual damages, a portion of which consisted of mental anguish damages. The Mississippi Supreme Court held that a long line of cases had led to the present rule that a "a plaintiff may recover for emotional injury proximately resulting from negligent conduct, provided only that the injury was reasonably foreseeable by the defendant." *Id.* at 1275. The court held, however, that the record proof on mental anguish damages was legally insufficient to support such an award. The evidence consisted of the plaintiff's boyfriend's testimony that plaintiff was "very upset," "very depressed" and unable to sleep over the incident.[1]

In *Universal Life Ins. Co. v. Veasley,* 610 So.2d 290 (Miss.1992), the court upheld an award of $500 in mental anguish damages. The plaintiff was the beneficiary of her daughter's life insurance policy. After plaintiff's daughter died, the insurer initially denied coverage. Several weeks later, the insurer realized that it had wrongfully denied coverage and paid the claim. While agreeing with the insurer that punitive damages were not

---

[1]The entirety of the boyfriend's testimony concerning the plaintiff's emotional state consisted of the following:

> She's been very depressed. Her kids have been very upset over all this and emotional. They've gone through a lot of stress and worry over the way their mother has been upset and sick and not able to sleep at night. I've been called to come out there and sit with her [on] occasions at night because of being [sic] so upset, and it's just ..[.] it's been a very detrimental thing for her.

*Id.*

warranted, the court upheld the award of mental anguish damages. The court reasoned that even in cases that involve no more than simple negligence:

> [I]t is entirely foreseeable by an insurer that the failure to pay a valid claim through the negligence of its employees should cause some adverse result to the one entitled to payment. Some anxiety and emotional distress would ordinarily follow, especially in the area of life insurance where the loss of a loved one is exacerbated by the attendant financial effects of that loss.... It is no more than just that the injured party be compensated for these injuries.

*Id.* at 295.

The court set out the evidence plaintiff had offered in support of mental anguish damages:

> [Plaintiff] testified that Universal's refusal to pay her claim caused her worry, nervousness, and depression. She also claimed she had sleepless nights and little or no tolerance for children or noises. She stated she was taking tranquilizers for her problems. There was no medical testimony presented during the trial and [plaintiff] admitted that she had some of the same problems before and after her daughter's death.

*Id.* at 292.

In *Finkelberg v. Luckett,* 608 So.2d 1214 (Miss.1992), the plaintiff sued his broker for refusing to allow him to withdraw funds from a jointly-held account, while allowing his wife to do the same, all while plaintiff and his wife were in the midst of divorce proceedings. The plaintiff claimed that without the money the wife had withdrawn from the account, she would not have been able to leave the state with their children. When asked how he had been damaged by the broker's conduct, he testified:

> I gave them my life savings and I trusted them to take this money and to use it to help me make money and for them to make money. I was intentionally told that I could not get the money when I went to get it when, in fact, I went to the

6

lawyer, I was able to get the money.  I guess the most important way that I've been harmed is I've been without my children for two years.  It's been a very difficult time and—

*Id.* at 1218.  The court concluded that the evidence presented at trial did not support an award of mental anguish damages under Mississippi law:

> The *coup de grace* on any claim for damages for mental anguish in this record, however, is the total absence of proof justifying it.  In the seminal case of *Sears Roebuck & Co. v. Devers,* we held that in a case of simple negligence damages for mental anguish unaccompanied by physical injury would be upheld only "if there is a resulting physical illness or assault upon the mind, personality or nervous system of the plaintiff which is medically cognizable and which requires or necessitates treatment by the medical profession."  405 So.2d [898] at 902 [ (Miss.1981) ].  Quoted with approval in *Wirtz v. Switzer,* 586 So.2d 775, 784 (Miss.1991).

*Id.* at 1221.

Doing our best to determine how the Mississippi Supreme Court would decide our case, we conclude that it would not sustain the award of mental anguish damages.  While *Veasley* appears to support the award given in our case, both *Rossini* and *Finkelberg* support USF & G's position.  *Rossini* accepts that mental anguish damages are recoverable even in simple negligence cases where such damages are reasonably foreseeable, but does not allow them where the proof offered consists of nothing more than generalized testimony that the plaintiff was very upset and depressed, and was unable to sleep.  In our case, the proof offered did not rise above this level, consisting solely of Greer's testimony that he was embarrassed, humiliated and "had problems resting."  *Finkelberg* permits mental anguish damages only where the injury results in a medically cognizable condition which requires professional medical

7

treatment, a requirement that was not met here. We also note that *Finkelberg* was decided after *Veasley,* and that the dissent in *Finkelberg* pointed out the apparent inconsistency in the two cases.[2] 608 So.2d at 1226. Further, *Finkelberg* was decided by the court sitting en banc, while *Veasley* was decided by a three-judge panel of the court.

B. *Punitive Damages and Attorney's Fees*

Greer complains that the district court erred in refusing an instruction on punitive damages, in effect directing a verdict in favor of USF & G on this claim. Again, Mississippi law in this area is not crystal clear. We conclude, however, that the district court did not err in denying punitive damages.

The Mississippi Supreme Court has often stated that punitive damages are appropriate only in the rare and extreme case. In *Veasley,* for example, the court allowed mental anguish damages but reversed the award of punitive damages. It noted that punitive damages are only allowed where the plaintiff proves "(1) malice, or (2) gross negligence or reckless disregard for the rights of others," and that the facts in that case suggested no error that was "anything more that clerical" and "an unfortunate episode of a failure of competence." 610 So.2d at 293-94. Likewise, in *Finkelberg,* the court reversed the award of punitive damages, noting that such damages "are to be awarded only in extreme cases,"

---

[2]Although *Finkelberg* is the later decided case, it appears earlier in the Southern Reporter, perhaps because the *Veasley* opinion as published includes a opinion dissenting from the denial of a petition for rehearing.

and that the defendant's conduct "was an act of negligence in which no greed, avarice or oppression was involved, and clearly was not the degree of negligence which would give rise to punitive damage liability." 608 So.2d at 1220-21. On the other hand, the Mississippi Supreme Court recently reversed a lower court's partial summary judgment denying punitive damages to an insured in *Lewis v. Equity Nat'l Life Ins. Co.,* 637 So.2d 183 (Miss.1994). The insurer had refused to pay medical benefits under a policy when the plaintiff was injured in an automobile accident. The court cataloged numerous circumstances where punitive damages against an insurer may be appropriate even where the insurer had an arguable basis for denying the claim, including those where the insurer (1) denies a claim because of a material misrepresentation by its own agent, (2) denies a claim without proper investigation, (3) inordinately delays processing the claim, and (4) engages in "post-claim underwriting." *Id.* at 186-89.

On balance, however, we believe that Mississippi law does not allow for the award of punitive damages against the insurer here, where the plaintiff's proof fails to establish any legally recoverable actual damages. The Mississippi Supreme Court implicitly recognized such a rule in *Travelers Indem. Co. v. Wetherbee,* 368 So.2d 829 (Miss.1979). The court affirmed an award of punitive damages against an insurer who had intentionally withheld payment on a fire insurance claim. The court explained that punitive damages were appropriate, in part because actual damages consisting of the policy proceeds were properly awarded:

In *Standard Life Insurance Co. of Indiana* [*v. Veal,* 354 So.2d 239 (Miss.1977) ], we upheld a judgment for punitive damages in conjunction with an award for the policy coverage. In our opinion this satisfied *the requirement that punitive damages will not be awarded absent actual damages.* We presently think it is fulfilled since the verdict for exemplary damages is in conjunction with compensatory damages including the policy proceeds.

*Id.* at 836 (emphasis added). In contrast to *Wetherbee,* the insurer in our case paid the full amount of the default judgment, and Greer failed to prove any recoverable actual damages, for the reasons explained above. In a case of zero actual damages, we believe that Mississippi law does not allow him any punitive damages.

As for the attorney's fees awarded, the prevailing view in Mississippi appears to be that attorney's fees are not recoverable absent an award of punitive damages,[3] although some cases indicate that attorney's fees can be awarded as extra-contractual or consequential damages even where punitive damages are not warranted, if the insurer denied a claim without any arguable basis.[4] Finding no authority to the contrary, however, we are

_____

[3]*See, e.g., Miller v. Allstate Ins. Co.,* 631 So.2d 789, 795 (Miss.1994) ("In the absence of a showing of gross or willful wrong entitling the Movant to an award of punitive damages, the Mississippi Supreme Court has never approved of awarding attorneys fees to the successful litigant."); *Central Bank v. Butler,* 517 So.2d 507, 512 (Miss.1987) ("[T]his Court has held that in the absence of contractual provisions or statutory authority, attorneys' fees may not be awarded as damages in a case unless punitive damages are also proper."); *Aetna Casualty and Sur. Co. v. Steele,* 373 So.2d 797, 801 (Miss.1979) ("Attorney's fees are not recoverable as an element of damages unless the infliction of punitive damages is justified.").

[4]*See Veasley,* 610 So.2d at 295 ("Some justices on this court have suggested that extra-contractual damages ought be awarded in cases involving a failure to pay on an insurance contract without an arguable reason even where the circumstances are not such that punitive damages are proper.... [I]t is entirely foreseeable by

10

persuaded that Mississippi law does not allow the recovery of attorney's fees where the insured recovers neither actual nor punitive damages.

REVERSED AND RENDERED.

---

an insurer that the failure to pay a valid claim through the negligence of its employees should cause some adverse result to the one entitled to payment.... Additional inconvenience and expense, attorneys fees and the like should be expected in an effort to have the oversight corrected. It is no more than just that the injured party be compensated for these injuries."); *Andrew Jackson Life Ins. Co. v. Williams,* 566 So.2d 1172, 1186 n. 13 (Miss.1990) ("Conceivably, upon presentation of sufficient proof, consequential or extra-contractual damages (*e.g.,* reasonable attorney fees, court costs, and other economic losses) may be awarded in cases involving a lack of a reasonably arguable basis—notwithstanding that the insurer is not liable for punitive damages.").