637 So.2d 183 (1994)
Florence M. LEWIS
v.
EQUITY NATIONAL LIFE INSURANCE COMPANY and Ron Farmer.
No. 91-CA-00803.
Supreme Court of Mississippi.
May 12, 1994.
Michael T. Lewis, Lewis & Lewis, Nancy Allen Wegener, Clarksdale, for appellant.
Calvin L. Wells, Michael Farrell, Wells Moore, Simmons and Neeld, Jackson, for appellee.
Before PRATHER, P.J., and PITTMAN and McRAE, JJ.
McRAE, Justice, for the Court:
This appeal arises from a July 23, 1991, order of the Humphreys County Circuit Court granting Equity National Life Insurance Company's motion for partial summary judgment on the issue of punitive damages in a refusal to pay insurance benefits case. A jury found that Equity National and its agent, Ron Farmer, were liable to Florence Lewis for contractual damages in the amount of $200.00 after the insurer refused to pay benefits under an intensive care policy when she was injured in an automobile accident. *184 Finding that the the circuit court erred in refusing to place the issue of punitive damages before the jury, we reverse and remand for proceedings consistent with this opinion.

I.
On April 18, 1989, Ron Farmer, an agent for Equity National Life Insurance Co., sold Mrs. Florence Lewis an individual intensive care policy which provided benefits of $200.00 per day.[1] She was charged a $3.00 monthly premium, which she paid by bank draft. After Mrs. Lewis was injured in an automobile accident on March 3, 1990, and spent one night in the Intensive Care Unit of Baptist Memorial Hospital North in Oxford, Mississippi, Equity National refused to pay her claim and rescinded the policy. The insurer asserted that she had failed to reveal a pre-existing heart condition on her policy application by answering "no" to the question: "Has any person proposed for intensive care or heart attack insurance ever been diagnosed or treated as a victim of heart attack, heart condition, heart trouble or any abnormality of the heart?"
Mrs. Lewis testified that when Farmer solicited the policy, she had told him that she was a diabetic and previously had heart problems in 1983. She stated that she had given him the names of the physicians who had treated her, including Dr. J.S. Purdon who, in 1988, told her that her heart was "fine." She indicated that Farmer did not ask her any questions about her medical history while he filled out the policy application. Although she signed the application, she apparently did not read it.
When Equity National initially questioned Farmer about Mrs. Lewis' application, after the suit was filed in January 1991, he indicated that he had asked her the medical questions on the application and that she did not advise him of any prior heart problems. He acknowledged that he had no real memory of writing the policy, but assumed he had asked her the usual questions. He did recall that when asked, she denied any heart problems.
On March 3, 1990, Mrs. Lewis was injured in an automobile accident. Her injuries were limited to several broken ribs, a broken thumb and lacerations to her head. She was treated at Baptist Memorial Hospital, where she spent one night in the intensive care unit.
The hospital completed and sent a UB-82 form to Equity National, which the insurer received on May 21, 1990. Sandra D'Orzio, Assistant Vice President in the Claims Department of Aegon Insurance Company, the parent company of Equity National, testified that the UB-82 is a unified billing form, used by most larger hospitals to report claims.
On July 23, 1990, Mrs. Lewis wrote to Equity National to determine the status of her claim. The insurer responded by sending her a claimant's form and attending physician's statement on August 24, 1990. Mrs. Lewis completed the claimant's statement on September 12, 1990, indicating that she had not been "treated for, or diagnosed as having had a heart attack, heart trouble, or any other abnormal condition of the heart prior to the effective date of this policy." She testified that she answered the question negatively because two specialists had confirmed that there was no damage to her heart and moreover, the injuries suffered in the accident were totally unrelated to the condition of her heart. Dr. Michael L. King, who treated Mrs. Lewis' injuries, completed the attending physician's statement on September 24, 1990. He indicated that Mrs. Lewis had been treated for an "occulusion [sic] of the left coronary artery" in 1983.
On November 28, 1990, eight and one-half months after the claim was filed, Equity National wrote to Mrs. Lewis, informing her that its investigation was complete. The letter stated that because the insurer had learned that Mrs. Lewis was diagnosed with a heart condition prior to the issuance of the policy, the policy would be rescinded. A check for $57.00, which Mrs. Lewis had paid in premiums, was enclosed.
*185 According to Ms. D'Orzio, Equity National's decision to rescind the policy was based solely on the information provided in Dr. King's statement. She admitted that no further investigation was undertaken beyond obtaining the claim form and submitting it to the underwriting department. No inquiries were made either to Farmer or Mrs. Lewis' physicians. Moreover, the insurer neither requested nor received any records pertaining to Mrs. Lewis' injuries or her alleged heart condition.
Mrs. Lewis filed suit against Equity National and Ron Farmer in the Humphreys County Circuit Court on January 17, 1991. She sought both compensatory and punitive damages. Equity National denied the allegations and raised the affirmative defense that Mrs. Lewis had made a material misrepresentation on her application, thus entitling it to rescind the policy pursuant to Miss. Code Ann. § 83-9-11(3).
On June 3, 1991, Equity National and Farmer filed a motion for summary judgment, or in the alternative, a motion for partial summary judgment on the issue of punitive damages, based on the insurer's contention that it had an arguable reason to rescind the policy. Following a June 13, 1991 hearing, the circuit court granted Equity National's motion for partial summary judgment on the issue of punitive damages. A trial on the issue of actual damages was held on July 23, 1991, after which the jury returned a $200.00 verdict in favor of Mrs. Lewis.

II.
The circuit court granted the insurer's motion for partial summary judgment on the issue of punitive damages, finding that Equity National had an arguable basis for denying Mrs. Lewis' claim and that there was nothing to indicate that the insurer acted out of malice, gross negligence, or with wanton or reckless disregard for the claimant's rights. We are now asked to determine whether the issue of punitive damages also should have been presented to the jury.
In insurance contract cases, "[t]he trial court is responsible for reviewing all evidence before it in order to ascertain whether the jury should be permitted to decide the issues of punitive damages." Universal Life Insurance Co. v. Veasley, 610 So.2d 290, 293 (Miss. 1992). Where there is a legitimate or arguable reason for denial of the claim, the issue should not be put to the jury. Id. In Veasley, we defined "arguable reason" as "`nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise [the] heightened level of an independent tort.'" 610 So.2d at 293, quoting Pioneer Life Insurance Co. of Illinois v. Moss, 513 So.2d 927, 930 (Miss. 1987). However, as we stated in Andrew Jackson Life Insurance Co. v. Williams, 566 So.2d 1172 (Miss. 1990), "Mississippi law has evolved to a point of recognition that submission of the punitive-damages issue may be submitted  notwithstanding the presence of an arguable basis." Id. at 1186 (emphasis in original). In those cases where there is a question that the mishandling of a claim or the breach of an implied covenant of good faith and fair dealing may have reached the level of an independent tort  despite the possibility of an arguable basis for denying the claim, the Williams Court outlined the following procedure:
(1) the issue should be submitted to the jury for resolution; and (2) if the jury resolves the issue against the insurer; (3) the trial judge may upon post-verdict motion and upon reflection find: (a) that the evidence is not supportive of the verdict; (b) that issue should not have been submitted to the jury; and (c) that j.n.o.v. or a new trial should be granted.
Id. at 1187.
The Fifth Circuit, in Merchants National Bank v. Southeastern Fire Insurance Co., 751 F.2d 771 (1985), followed the three-part test set forth in Reserve Life Insurance v. McGee, 444 So.2d 803, 809-810 (Miss. 1983), for determining when a punitive damage instruction should be presented to the jury in a bad faith case. The court explained:
Initially, the trial court should examine whether as a matter of law the insurer has a legitimate or arguable reason to deny the claim. Should the court find that there is a legitimate or arguable reason for the *186 denial, a punitive damage instruction should not be given; if however, reasonable minds could differ as to whether there is a legitimate or arguable reason, the court must next consider whether there is evidence of gross negligence or intentional misconduct in the denial of the claim. If there is sufficient evidence to indicate that the insurer acted intentionally or was grossly negligent, a punitive damage instruction should be granted.
Merchants National Bank, 751 F.2d at 775 (footnote omitted) (citations omitted). The court further noted that requiring the trial judge to determine whether there is sufficient evidence of wrongdoing to place the issue of punitive damages before the jury "would often be superfluous since an insurer's failure to pay a claim without an arguable reason is usually tantamount to a wilful or grossly negligent refusal to pay." Id. at 775 n. 3. Moreover, as we explained in Mississippi Farm Bureau Mutual Insurance Co. v. Todd, 492 So.2d 919 (Miss. 1986), whether a punitive damage instruction should be given to the jury is dependent upon the evidence in each case.
Mrs. Lewis contends that the Circuit court erred in granting Equity National's motion for partial summary judgment on the issue of punitive damages and that the question should have been submitted to the jury. She refutes Equity National's assertion that it had a "legitimate or arguable reason" for refusing to pay her claim, arguing that any misrepresentation on the policy application was made by the agent, Ron Farmer. She further asserts that Equity National did not make a proper investigation of her claim and that it had no arguable reason for delaying its processing of the claim. Next she contends that the insurer engaged in the practice of post-claim underwriting, that is, waiting until a claim has been filed to obtain information and make underwriting decisions which should have been made when the application was made, not after the policy was issued. In conclusion, Mrs. Lewis eschews the applicability of the United States District Court's decision in Guy v. Commonwealth Life Insurance Co., 894 F.2d 1407 (5th Cir.1990), to the facts of this case. Finding merit in each of Mrs. Lewis' arguments, we hold that the circuit court erred in granting the motion for partial summary judgment and reverse and remand for a trial on the issue of punitive damages.

A. Tortious Breach of Contract

Equity National denied Mrs. Lewis' claim on the basis of her alleged failure to reveal on the policy application that she previously had been treated for a heart condition. The circuit court found that the insurer had a "legitimate or arguable reason" to refuse the claim, thus precluding her claim for punitive damages. Mrs. Lewis, however, contends that the issue of punitive damages should have presented to a jury because any misrepresentation on the application was made by Ron Farmer, Equity National's agent. She asserts that on the facts of this case, the so-called "lying exception" is applicable. As explained in the concurring opinion to Blue Cross & Blue Shield of Mississippi v. Campbell, 466 So.2d 833 (Miss. 1984), the lying exception "arises in the context of an insurance company's defense which is based wholly on an issue of the truthfulness of the insurance company's witnesses." Id. at 853. Where, as in the case sub judice, an agent has misrepresented information that the claimant disclosed to him, there is jury question of whether denial of the claim was arguable. Williams, 566 So.2d at 1187.
We have not hesitated to allow jury consideration of punitive damages in cases where an insurer denied a claim because of a material misrepresentation made by its agent. In Reserve Life Insurance Co. v. McGee, 444 So.2d 803 (Miss. 1983), McGee, the insured, told the agent he was in "good health." The agent then indicated on the policy application that McGee was in "excellent" health. Id. at 804-805. Six months after the policy was issued, McGee experienced urinary tract problems and was hospitalized for removal of a malignant lesion from his bladder. Id. at 805. After submitting his hospitalization claim to Reserve Life, the insurer notified him that his medical history was being investigated. Id. After learning that McGee had seen a doctor on ten occasions during a two-year period prior to the issuance of the policy for "transient ischemic *187 attack[s]," the insurer rescinded the policy and refused to pay his claim, stating that had it been aware of his medical history, coverage would not have been issued. Id. This Court found that the evidence "clearly" presented a jury question on the issue of punitive damages, and affirmed the jury's award of $158,000.00 in punitive damages. Id. at 812.
Similarly, in National Life and Accident Insurance Company v. Miller, 484 So.2d 329 (Miss. 1985), we found that the issue of punitive damages was properly submitted to a jury where the "agents failed to correctly record Mrs. Miller's responses on the application and further failed to bring that error to the attention of the claims department, and in fact, misrepresented the extent of their knowledge... ." Id. at 336. During the course of soliciting life insurance policies, Mrs. Miller revealed to the insurance agent that her son had a heart murmur. The agent considered the heart murmur insignificant and answered "no" to questions on the policy application regarding whether any of the proposed insureds had been treated or hospitalized for heart disease. Id. at 330-331. Several months after the policy was issued, the child died during open heart surgery. Six months later, the insurer denied benefit payments, asserting that its investigation had revealed that the child had a congenital heart defect and had been hospitalized on numerous occasions for treatment. Id. at 331.
Consistent with the holdings in these cases as well as with our decision in Williams, where we recognized that the issue of punitive damages may go to the jury despite an arguable reason for denying a claim, Equity National was not entitled to partial summary judgment as a matter of law.

B. Negligent Investigation

Mrs. Lewis next contends that Equity National's failure to properly investigate her claim warranted submission of the issue of punitive damages to a jury. Equity National's representative, Sandra D'Orzio admitted that the decision to rescind Mrs. Lewis' policy and refuse her claim was based solely on the information provided in Dr. King's statement. Dr. King treated Mrs. Lewis only for injuries sustained in the March 1990 accident and not for any prior injuries or conditions. He indicated on his statement merely that she had been treated for a coronary occlusion in 1983. Ms. D'Orzio stated that no further investigation was undertaken to verify the alleged condition or to obtain Mrs. Lewis' medical records. Moreover, no inquiries were made to Farmer or Mrs. Lewis' physicians prior to the denial of the claim. Nothing was done beyond obtaining the claim form and submitting it to the underwriting department.
In Bankers Life & Casualty Company v. Crenshaw, 483 So.2d 254 (Miss. 1985), we established that the denial of a claim without proper investigation may give rise to punitive damages. Id. at 276. We recognized that "an insurance company has a duty to the insured to make a reasonably prompt investigation of all relevant facts." Id. See also, Life and Casualty Insurance Co. of Tennessee v. Bristow, 529 So.2d 620, 623-624 (Miss. 1988). Proper investigation, the Crenshaw Court held, means obtaining "all available medical information relevant to [the policyholder's] claim." Id. at 272. In Eichenseer v. Reserve Life Insurance Co., 682 F. Supp. 1355, 1366 (N.D.Miss. 1988), the court found that under Mississippi law, before denying a claim, the insurer, at a minimum, must determine whether the policy provision at issue has been voided by a state or federal court, interview its agents and employees to determine if they have knowledge relevant to the claim, and make a reasonable effort to secure all medical records relevant to the claim. Id. at 1366. In the case sub judice, Equity National did not even undertake minimal inquiry into Mrs. Lewis' claim. Ron Farmer, the agent, was not questioned about the claim until after the lawsuit was filed in January 1991. Equity National admits that it neither made an investigation nor requested any medical information regarding Mrs. Lewis' claim or policy application. This evidence suggests that there exist questions of fact regarding the adequacy of Equity National's investigation of Mrs. Lewis' claim which should have been considered by a jury.

*188 C. Timeliness

Mrs. Lewis further asserts that the question of punitive damages should have been presented to the jury because of Equity National's inordinate delay in processing the claim in contravention of its own policy language. The policy provided that if forms for filing proof of loss were not given to the claimant within fifteen days of receipt of the notice of loss, the claimant could meet his proof of loss requirement by submitting a written statement of the nature and extent of loss. It further stated that "[a]fter receiving written proof of loss, we will immediately pay all benefits then due under the policy." (emphasis added). Equity National was notified of Mrs. Lewis' loss when it received a copy of the UB-82 form from Baptist Memorial Hospital on May 21, 1990. After more than sixty days had passed, Mrs. Lewis sent an inquiry regarding her claim to the insurer on July 23, 1990. One month later, on August 24, Equity National sent forms for Mrs. Lewis and her attending physician to complete. Mrs. Lewis completed her form on September 12; Dr. King, on September 24. On November 28, 1990, six months after the original notice of loss was received, Equity National sent Mrs. Lewis a letter rejecting her claim and rescinding the policy.
In its defense, the insurer asserts only that it moved personnel and claims files to a new location five city blocks away on April 19, 1990. Sandra D'Orzio testified that this delayed the "turn around claim" time from its usual two days to more than thirty working days until the end of 1990. Equity National contends that these circumstances "justify" its delay in processing Mrs. Lewis' claim.
The legislature has spoken to this issue. Miss. Code Ann. § 83-9-5(1)(f) specifies that, upon receipt of a notice of claim, the insurer shall furnish a claim form within fifteen days. If this section is not followed, the insured will be deemed to have complied with the proof of loss requirement. Providing no exceptions, Miss. Code Ann. § 83-9-5(1)(h) further requires that all benefits payable under a health insurance policy must be paid or denied within forty-five days of the insurer's receipt of written proof of loss. If the claim has not been acted upon by the insurer within that time, the claimant further is entitled to any damages allowed by law and interest on the accrued benefits. The statute appears to be in conformity with the Unfair Claims Settlement Practices Model Regulation originally adopted by the National Association of Insurance Commissioners' Conference in 1976.[2] NAIC Proceedings, Vol. II (1976).
Thus, by failing to send Mrs. Lewis a proof of loss form within fifteen days and waiting more than six months to notify her of the status of the claim without even advising her of its ostensible reason for the delay, Equity National not only breached its own standards as well as those of the insurance industry, but apparently violated the provisions of § 83-9-5(1)(h).

D. Post-Claim Underwriting

Mrs. Lewis further asserts that the question of punitive damages should have been presented to a jury because Equity National engaged in post-claim underwriting, a practice condemned by several members of this Court. Miller, 484 So.2d at 339 (Hawkins and Sullivan, JJ., concurring); Williams, 566 So.2d at 1193. Reiterating the special concurrence in Miller, the Williams Court found that:
The insurer can continue to "play the odds" through usage of risky practices which motivates agents to make misrepresentations; they can then deny a claim; flippantly "absolve" itself of any responsibility for such misrepresentations; and it can lose. In this case, the insurer "played the odds and lost."
Williams, 566 So.2d at 1193. An insurer has an obligation to its insureds to do its underwriting *189 at the time a policy application is made, not after a claim is filed. It is patently unfair for a claimant to obtain a policy, pay his premiums and operate under the assumption that he is insured against a specified risk, only to learn after he submits a claim that he is not insured, and, therefore, cannot obtain any other policy to cover the loss. The insurer controls when the underwriting occurs. It therefore should be estopped from determining whether to accept an insured six months or more after a policy is issued. If the insured is not an acceptable risk, the application should denied up front, not after a policy is issued. This allows the proposed insured to seek other coverage with another company since no company will insure an individual who has suffered serious illness or injury.
Equity National clearly waited until after Mrs. Lewis filed a claim on her policy before it chose to underwrite her policy or evaluate the risk involved. Sandra D'Orzio acknowledged that small policies such as the one issued to Mrs. Lewis are issued under simplified guidelines and admitted that no underwriting was done on her policy by the insurer's Little Rock office until after the claim was filed.
Equity National asserts that Mrs. Lewis has raised the issue of post-claim underwriting for the first time on appeal. However, in her response to interrogatories, Mrs. Lewis indicated that her expert witness, Michael S. Barranco, was expected to testify that Equity National had a policy of liberally underwriting low cost policies, only to ignore reported claims until the insured complain, at which time it would delay or deny payment of benefits. The issue of the insurer's practice of post-claim underwriting was raised also in Mrs. Lewis' response to the motion for summary judgment. Thus, Equity National's argument is without merit.

E. Applicability of Guy v. Commonwealth Life Insurance Co.

In making his determination that Equity National was entitled to summary judgment on the issue of punitive damages, the circuit court noted that both parties relied largely upon their divergent interpretations of McGee and Guy v. Commonwealth Life Insurance Co., 894 F.2d 1407 (5th Cir.1990). Equity National asserts that based on Guy, the circuit court properly granted partial summary judgment. Mrs. Lewis, however, contends that Guy is distinguishable.
As Mrs. Lewis contends, the Fifth Circuit's opinion in Guy may indeed contradict the holdings of this Court in McGee, Miller, Crenshaw, and McCann. An agent of Commonwealth approached Mrs. Guy about purchasing a medical insurance policy. He asked only about her address, date of birth and Social Security number. Without further questioning, he completed the policy application and submitted it to the insurer. Guy, 894 F.2d at 1409. Seven months later, Mrs. Guy was hospitalized for removal of her gall bladder. Id. Commonwealth investigated the claim and learned that she had suffered from gall bladder problems prior to obtaining the policy. The insurer denied coverage based on the pre-existing condition and later rescinded the policy on other grounds after determining that she had been treated for gall bladder problems more than two years prior to issuance of the policy. Id. at 1409.
The United States District Court for the Northern District of Mississippi upheld a punitive damages award in the amount of $141,000.00 in Guy v. Commonwealth Life Insurance Co., 698 F. Supp. 1305, 1315 (N.D.Miss. 1988). The Fifth Circuit, however, in a decision which flies in the face of Mississippi bad faith jurisprudence, reversed the lower court on the issue of punitive damages, finding that "[a]lthough the claims handling process used by Commonwealth fell short of perfection, it served its essential goal of affording adequate investigation of Guy's claim" and did not rise to the level of reckless or grossly negligent conduct. Guy, 894 F.2d at 1414.
It is difficult to reconcile the Fifth Circuit's decision in Guy with Mississippi case law. Moreover, it is factually distinguishable from the case sub judice. Mrs. Guy gave no information to the agent, whereas Mrs. Lewis informed Farmer about her diabetes as well as her heart condition. Further, unlike Mrs. Guy, Mrs. Lewis' claim was for injuries not remotely related to any pre-existing condition. *190 Finally, as distinguished from Guy, Equity National made no effort to obtain Mrs. Lewis' medical records, to consult with her physicians, or to even seek the opinion of its own in-house doctors or nurses. Therefore, the Fifth Circuit's opinion in Guy is of no benefit to Equity National.
A jury determined that Mrs. Lewis was entitled to actual damages of $200.00, the amount payable under the Equity National policy for one day of intensive care treatment. Even if Equity National had an arguable reason for denying the claim, as it contends, it was not entitled, as a matter of law, to partial summary judgment on the issue of punitive damages. Moreover, there remain questions of material fact which can be determined only by a jury. Because the circuit court's decision was contrary to Mississippi law, we reverse and remand for proceedings consistent with this opinion.
REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
HAWKINS, C.J., concurs in result only.
DAN M. LEE, P.J., not participating.
NOTES
[1] Farmer had previously sold Mrs. Lewis a cancer insurance policy in 1986, for which she paid a premium of $13.40 per month. On the application for the intensive care policy at issue, Farmer checked the box marked "no" in response to the question, "Does the proposed insured have a Cancer Expense Policy with this Company?"
[2] In June, 1990, the NAIC adopted the Model Unfair Claims Settlement Practices Act. Pursuant to its Standards for Prompt, Fair and Equitable Settlements Applicable to All Insurers, an insurer is allowed twenty-one days to advise the insured that his claim has been accepted or denied. If the investigation is not completed within that time, the insurer must advise the claimant in writing within forty-five days of the initial claim and every forty-five days thereafter of the reasons why additional time is required. Model Unfair Claims Settlement Practices Act §§ 7A and 7B (NAIC 1991).