IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-60165
Summary Calendar

_____

BOBBY WILLIAMS

Plaintiff - Appellant

v.

DIXIE SPECIALTY INSURANCE, INC.; STAR INSURANCE COMPANY;
WORLDWIDE WEATHER INSURANCE AGENCY

Defendants - Appellees

_____

_____

Appeal from the United States District Court
for the Southern District of Mississippi
**(3:93cv447BN)**
_____
**April 16, 1996**
Before KING, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Bobby Williams brought a breach of contract action against

Dixie Specialty Insurance, Inc. ("Dixie"), Star Insurance Company

("Star"), and Worldwide Weather Insurance Agency ("Worldwide"),

(collectively, the "Defendants"), for compensatory and punitive

damages arising out of an agreement for rain insurance coverage

_____

[*]   Pursuant to Local Rule 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in Local Rule
47.5.4.

for an outdoor concert.  Williams appeals the district court's granting of the Defendants' motion for judgment as a matter of law and denial of his motion for judgment as a matter of law, or in the alternative, for a new trial.  We affirm.

## I.  BACKGROUND

Williams contacted Alberta Gibson about purchasing rain insurance for an outdoor concert that he was promoting.  The concert was to be held on June 7, 1992, at Kickapoo Park in Hinds County, Mississippi.  On May 26, 1992, Williams, a resident of Jackson, Mississippi, and Gibson, an employee of State-wide General Insurance Agency ("State-wide"), submitted an application for a quote through Dixie to Worldwide.  State-wide was a licensed independent insurance agency operating in Mississippi. Dixie was a Mississippi corporation and a wholesale insurance broker.  Worldwide was an out-of-state corporation and the managing agent of Star.  Star was a Michigan corporation. Williams signed an application for rain insurance dated May 28, 1992.  There was conflicting evidence as to how the application was completed.  Gibson testified that she completed the application according to Williams's instructions.  Williams testified that Gibson discussed all of the questions with him except one; he claimed that Gibson did not ask the question pertaining to where the rain was to be measured.  As to this question, Gibson checked the space on the application corresponding to "Closest National Hourly Weather Station."

2

Additionally, in response to the options listed under the heading "Measurement of weather peril against: Rain," Gibson checked "1/2 inch (.50) or more."  With regard to "Coverage Format for Rain Only," Gibson checked "Consecutive Dry Hours" and included a "6" in parenthesis next to her check mark.[2]  Williams sent the application for insurance to Worldwide, along with a check in the amount of $3000--10% of the $30,000 coverage requested.  Williams testified that he did not read the application.

On June 3, 1992, Star issued a Commercial Inland Marine Weather Insurance Policy to Williams whereby Star agreed to indemnify Williams for loss in the amount of $30,000 caused by .50 inches or more of rainfall on June 7, 1992 between the hours of 12 p.m. and 7 p.m. as recorded at the closest national hourly weather station.  The closest national hourly weather station was the government weather station located at the Jackson Airport,

_____

[2]     The claims adjuster for Star testified that consecutive dry hours "means that there are so many hours in a row that are dry."  The Director of special events at Worldwide testified that "1/2 inch" and "consecutive dry hours," are "two entirely different types of coverage."  She stated:  "Either you have half inch or you have consecutive; you can't have both. . . . [C]onsecutive dry hours is purchased only by film commercials or movie productions."  She added that consecutive dry hours coverage is offered at a 55% rate--or  approximately $17,000 for $30,000 worth of coverage, as opposed to the 10% rate charged for .50 inches coverage--$3,000 for $30,000 worth of coverage.
Although both the quote given by Worldwide and the insurance policy issued by Star specified .50 inches coverage and made no mention of consecutive dry hours coverage, the insurance application stated that the application would "BE ATTACHED TO AND MADE PART OF THE POLICY."  Adding to the confusion regarding whether Williams's policy included consecutive dry hours coverage and, if so, to what extent, was the response on the application specifying "6" consecutive dry hours coverage, despite the fact that the application indicated the event was to take place between 12 p.m. and 7 p.m.--seven hours.

approximately twenty miles from the concert site.  The Director of special events at Worldwide testified that the policy was faxed to Dixie three days before the concert.  The policy was not delivered to Williams until after the day of the concert.

Williams was unable to proceed with the concert on June 7, 1992, due to rain at the site.  There was no measurement of rain taken on location with any type of gauge.  Earl Gasson, a retired meteorologist living approximately three miles from Kickapoo Park, recorded approximately .84 inches of rainfall at his home during the twenty-four hour period from 6 a.m. on the morning of June 7, to 6 a.m. on the morning of June 8.  Gasson testified that he did not know how much rain fell at the concert site.

Williams made a claim for benefits under the policy issued by Star.  He calculated that the out-of-pocket expenses he incurred as a result of the cancellation of the concert totalled $30,160.96.  Star denied the claim because less than .50 inches of rain was measured during the time period at the location specified in the policy.

On June 4, 1993, Williams filed suit against Star, Dixie, and Worldwide in the Circuit Court of the First Judicial District of Hinds County, Mississippi.  Claiming breach of contract, Williams sought to recover compensatory and punitive damages for alleged losses sustained as a result of Star's failure to pay his claim under the rain insurance policy.  He alleged that Dixie and Worldwide were agents of Star.  The Defendants removed the case to the United States District Court for the Southern District of

4

Mississippi.  Additionally, the Defendants filed a third-party complaint against State-Wide.

Williams filed a Motion for Leave to File Amended Complaint in order to add an independent state law claim against Dixie for negligent infliction of emotional distress.  The United States Magistrate Judge denied Williams leave to file his amended complaint.  Williams filed a Motion to Remand the case to state court alleging that Defendants' removal was improper.  Denying Williams's motion to remand, the court found that there was no possibility that Williams could establish a cause of action against Dixie in state court because Williams asserted no independent tort by Dixie and under Mississippi law an agent for a disclosed principal cannot be liable for breach of contract by his principal.

Trial of the lawsuit began on December 15, 1994.  After Williams rested, he moved for a directed verdict on the issue of liability and the Defendants moved for Judgment as a Matter of Law.  The district court denied Williams's motion and granted in part the motion of the Defendants.  The court ruled that no proof had been presented from which a reasonable jury could find that either Dixie or Worldwide had done anything that would entitle Williams to obtain a judgment against them.  Ruling that both Dixie and Worldwide were agents for Star--a disclosed principal, the district court dismissed all of Williams's claims against them.

Additionally, the district court granted Star's Motion for Judgment as a Matter of Law with regard to Williams's claims for extra-contractual and punitive damages and Williams's claims for coverage under the insurance policy for .50 inches or more of rain.  The remaining issue to be presented to the jury was whether the insurance policy provided coverage for consecutive dry hours.  Williams and Star settled on this issue and the district court's Final Judgment and Order was entered on December 16, 1993.  Williams filed a Renewal of Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial, which the district court denied.  On February 28, 1995, Williams timely filed his Notice of Appeal.

## II. ANALYSIS

In the instant appeal, Williams asks this court to reverse the district court and to remand his cause for a new trial on the question of extra-contractual and punitive damages.  It is well-settled under Mississippi law that punitive damages are appropriate only in the rare and extreme case.  Greer v. Burkhardt, 58 F.3d 1070, 1074 (5th Cir. 1995).  "[T]hey should be allowed only with caution and within narrow limits."  Beta Beta Chapter of Beta Theta Pi Fraternity v. May, 611 So. 2d 889, 894 (Miss. 1992).  "[B]efore punitive damages may be recovered from an insurer, the insured must prove by a preponderance of the evidence that the insurer acted with (1) malice, or (2) gross negligence or reckless disregard for the rights of others."  Hans

6

<u>Constr. Co., Inc. v. Phoenix Assurance Co.</u>, 995 F.2d 53, 55 (5th Cir. 1993) (quoting <u>Universal Life Ins. Co. v. Veasley</u>, 610 So. 2d 290, 293 (Miss. 1992)).  Punitive damages are unavailable if the insurance company had a legitimate or arguable reason for failing to pay a claim.  <u>Id.</u>; <u>Guy v. Commonwealth Life Ins. Co.</u>, 894 F.2d 1407, 1411 (5th Cir. 1990) (citing <u>Standard Life Ins. Co. v. Veal</u>, 354 So. 2d 239, 248 (Miss. 1977)).  An insurer is also shielded from extra-contractual damages--e.g. reasonable attorney fees, court costs, and other economic losses--where there was an arguable reason for denying a claim.  <u>Hans v. Phoenix</u>, 995 F.2d at 56.

Williams raises two sets of issues for consideration on appeal:  (1) whether the district court committed reversible error by limiting the introduction of certain evidence--evidence of extra-contractual and punitive damages, and certain evidence offered for impeachment purposes; and (2) whether the district court erred in finding that Star had an arguable reason to deny payment of Williams's claim.  We address these issues in turn.

**A.    Excluded Evidence**

The district court ruled in the instant case that evidence of extra-contractual and punitive damages could be presented only after a finding of bad faith.  The court based this ruling on the provisions of Miss. Code Ann. § 11-1-65, which states in pertinent part:

(1) In any action in which punitive damages are sought:
    . . . .
    (b) . . . the trier of fact shall first determine whether compensatory damages are to be awarded and in

7

what amount, before addressing any issues related to
punitive damages.

   (c) If, but only if, an award of compensatory damages
has been made against a party, the court shall promptly
commence an evidentiary hearing before the same trier
of fact to determine whether punitive damages may be
considered.

   (d) The court shall determine whether the issue of
punitive damages may be submitted to the trier of fact;
and, if so, the trier of fact shall determine whether
to award punitive damages and in what amount.

. . . .

(2) The provisions of Section 11-1-65 shall not apply
to:

   (a) Contracts; . . .

Miss. Code Ann. § 11-1-65.[3]

On appeal, Williams argues that limiting the introduction of
evidence of extra-contractual and punitive damages was reversible
error.[4]  However, Williams did not object to this ruling either
prior to or during the trial.  Williams first objected to the

---

   [3]    Williams contends that his claims fell outside the
statute because of the exclusion set forth in § 11-1-65(2)(a).
However, in an action based upon the bad faith of an insurance
company, such as the case sub judice, "punitive damages may not
be awarded in the absence of finding an independent tort separate
from the breach of contract."  Andrew Jackson Life Ins. Co. v.
Williams, 566 So. 2d 1172, 1186 (Miss. 1990) (citations and
internal quotation marks omitted).
   To the extent that the district court followed the guidance
of § 11-1-65 in this case, we find that it committed no
reversible error.  See Dixie Ins. Co. v. Mooneyhan, No. 91-CA-
01124-SCT., 1996 WL 97535, at *12 & *18 n.1 (Miss. March 7, 1996)
(noting, in case regarding punitive damages on bad faith denial
of insurance claim, that "the Mississippi Legislature has passed
a statute setting out procedures to be followed in actions where
punitive damages are sought. . . . § 11-1-65").

   [4]    Prior to rendering judgment, the district court
determined that it correctly bifurcated the trial in regard to
punitive damages but that it should have allowed proof as to bad-
faith extra-contractual damages to be presented during Williams's
case in chief.  The court determined that this error was
harmless, however, because Williams did not prove a case for
either punitive or extra-contractual damages.

8

district court's ruling to bifurcate the extra-contractual and punitive damages in his motion for a new trial. Because Williams did not move for judgment as a matter of law on the issue of extra-contractual and punitive damages at the close of all the evidence,[5] his post-trial motion on this issue was not properly raised. Fed. R. Civ. P. 50. This court will not consider on appeal an issue not properly raised in the proceedings below unless it involves a pure legal question and the failure to consider it would result in a miscarriage of justice. Auster Oil & Gas, Inc. v. Stream, 835 F.2d 597, 601 (5th Cir.), cert. dismissed, 486 U.S. 1027, and cert. denied, 488 U.S. 848 (1988). We find that failure to consider the bifurcation of extra-contractual and punitive damages from Williams's case in chief would not result in a miscarriage of justice. Therefore, we need not address this issue further.

As to the issue of excluded impeachment evidence, Williams argues that the district court erred in preventing him from introducing two affidavits for the purpose of impeaching Gibson. The court excluded the evidence, ruling: "That testimony, even if it is used for impeachment purposes, is improper under [Fed. R. Evid.] 404(b). Also under the circumstances of this case, its probative value is outweighed by the prejudice that it would have . . . ." In contrast to the issue of extra-contractual and

---

[5] At the close of his own case in chief, Williams moved for a directed verdict on the issue of liability.

punitive damages evidence, we consider this issue because Williams properly preserved error in the district court.

We review the evidentiary rulings of the district court under the deferential abuse-of-discretion standard. <u>Kelly v. Boeing Petroleum Servs., Inc.</u>, 61 F.3d 350, 356 (5th Cir. 1995). We will not reverse such evidentiary rulings unless they are erroneous and substantial prejudice results. Fed. R. Evid. 103(a). The burden of proving substantial prejudice lies with the party asserting error. <u>FDIC v. Mijalis</u>, 15 F.3d 1314, 1318-19 (5th Cir. 1994).

As to the affidavits excluded by the district court, we find that reversal is inappropriate. We conclude that none of Williams's evidentiary arguments warrant reversal of the district court's judgment.[6]

## B.    Arguable Reason to Deny Payment

We review the district court's ruling on a motion for judgment as a matter of law <u>de novo</u>, applying the same legal standard as did the trial court. <u>Conkling v. Turner</u>, 18 F.3d 1285, 1300 (5th Cir. 1994); <u>Omnitech Int'l, Inc. v. Clorox Co.</u>, 11 F.3d 1316, 1322-23 (5th Cir. 1994). Judgment as a matter of law is proper after "a party has been fully heard on an issue and

---

[6]    Additionally, Williams maintains that the dismissal of Worldwide and Dixie was improper. Beyond noting this in a footnote, however, he does not address this issue.

The district court ruled that, because Dixie and Worldwide were agents for Star--a disclosed principal, no proof had been presented from which a reasonable jury could find that either Dixie or Worldwide had done anything that would entitle Williams to obtain a judgment against them. We find that the dismissal of Worldwide and Dixie was not improper.

there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." Fed R. Civ. P. 50(a).  In evaluating such a motion, we view the entire trial record in the light most favorable to the non-movant and draw all inferences in its favor.  Conkling, 18 F.3d at 1300; Omnitech, 11 F.3d at 1322-23.  "The decision to grant a directed verdict is not a matter of discretion, but a conclusion of law based upon a finding that there is insufficient evidence to create a fact question for the jury."  Conkling, 18 F.3d at 1300; Omnitech, 11 F.3d at 1322-23 (citations, ellipsis, and internal quotation marks omitted).

In insurance contract cases, it is up to the trial court to decide whether the issue of punitive damages should be submitted to the jury.  Andrew Jackson Life Ins. Co. v. Williams, 566 So. 2d 1172, 1187 (Miss. 1990).  To this end, the trial court "is responsible for reviewing all evidence before it."  Lewis v. Equity Nat. Life Ins. Co., 637 So. 2d 183, 185 (Miss. 1994) (quoting Veasley, 610 So. 2d at 293).  The trial court should refuse to grant an instruction on the issue of punitive damages where the insurer had a legitimate or arguable reason for denying the claim.  Id.  "An arguable reason is one in support of which there is some credible evidence.  There may well be evidence to the contrary.  A person is said to have an arguable reason for acting if there is some credible evidence that supports the conclusions on the basis of which he acts."  Guy, 894 F.2d at 1411 (quoting Blue Cross & Blue Shield v. Campbell, 466 So. 2d

11

833, 851 (Miss. 1984) (Robertson, J., concurring in denial of rehearing)). Williams contends that Star had no arguable reason to deny his claim because the insurance policy was ambiguous. He argues that the policy was ambiguous because it was unclear whether he had .50 inches coverage or consecutive dry hours coverage or both. Because an ambiguous contract must be construed against the drafter--the Defendants, in this case, Banks v. Banks, 648 So. 2d 1116, 1121 (Miss. 1994), Williams contends that there could be no arguable reason for Star to deny his claim. Notwithstanding the ambiguous policy, this argument is unpersuasive. See Western Line Consol. Sch. Dist. v. Continental Casualty Co. & CNA, 632 F. Supp. 295, 304 (N.D. Miss. 1986) (finding that insurer had a reasonably arguable basis to deny payment on claims despite ambiguity in policy). The district court found that:

> [i]n this case there are in fact two ambiguities. One
> is as to whether there is one coverage or two types of
> coverage; the other is in regard to the consecutive dry
> hours coverage as to whether or not that coverage is to
> be gauged by how much rain fell at the airport during
> the time period in question.

The second ambiguity did not arise as a result of imperfect drafting but as a result of factual circumstances peculiar to this case.[7] The district court found that Star had an arguable reason to decline consecutive dry hours coverage because of this

---

[7] The Director of special events at Worldwide testified that the paperwork for consecutive dry hours coverage is different than that for .50 inches coverage, and that it includes a definition of "consecutive dry hours." The policy form issued to Williams did not mention or include a definition of "consecutive dry hours."

fact-based ambiguity.  We conclude that the ambiguities regarding Williams's coverage did not justify submitting the issues of extra-contractual and punitive damages to the jury.

Under certain circumstances, despite the presence of an arguable reason to deny the claim, the issues of extra-contractual and punitive damages may be submitted to the jury.[8] Lewis, 637 So. 2d at 185.  "For example, an insurer who denies a claim on an arguable basis could conceivably be held for punitive damages if the insured's financial straits were used as settlement leverage," Andrew Jackson, 566 So. 2d at 1186, or if the insured committed "sufficiently repugnant acts in dealing with the insured and the disputed claim."  Id.  The Mississippi Supreme Court has enumerated several other such circumstances, "including those where the insurer (1) denies a claim because of a material misrepresentation by its own agent, (2) denies a claim without proper investigation, (3) inordinately delays processing the claim, and (4) engages in `post-claim under-writing.'" Greer, 58 F.3d at 1074 (citing Lewis, 637 So. 2d at 186-89).

Williams argues that the "lying exception" is applicable in the instant case.  This exception arises when an insurance company's defense "is based wholly on the issue of the truthfulness of the insurance company's witnesses."  Blue Cross,

_____

[8]      Conversely, "[s]ubmission of the punitive-damages issue may not be warranted--notwithstanding an absence of an arguable basis for the denial or breach."  Andrew Jackson, 566 So. 2d at 1185.  Moreover, even where the insurer is not liable for punitive damages, an award of extra-contractual damages may be proper upon presentation of sufficient proof.  Id. at 1186 n.13.

13

466 So. 2d at 852 (Robertson, J., concurring in denial of rehearing).  The lying exception is "operative only where the jury is asked to reject on grounds of deliberate falsehood or fabrication the insurer's defense to the underlying contract claim."  Id.

Williams also argues that Star did not properly investigate his claim.  The Mississippi Supreme Court has "established that the denial of a claim without proper investigation may give rise to punitive damages.  [It has] recognized that an insurance company has a duty to the insured to make a reasonably prompt investigation of all relevant facts."  Lewis, 637 So. 2d at 187 (citations and internal quotation marks omitted).  In the health insurance context, one Mississippi court found that as a part of an insurance company's investigation, the insurance company must interview its agents and employees to determine whether they have knowledge relevant to the claim.  Id.  (citing Eichenseer v. Reserve Life Ins. Co., 682 F. Supp. 1355, 1366 (N.D. Miss. 1988), aff'd, 881 F.2d 1355 (5th Cir. 1989), vacated on other grounds, 499 U.S. 914 (1991)).

In the instant case, the measurement of rainfall at the airport was critical to the denial of Williams's claim.  Star's claims adjuster testified that he denied Williams's claim based on an examination of the insurance policy, a memo from the Director of special events at Worldwide, a note and radar maps supplied by Earl Gasson, and the rainfall records of the Jackson Airport.  Williams charges that, when Gibson was filling out the

14

insurance application for him, she did not offer Williams the opportunity to choose a different location from which to measure the rain,[9] and that, during his investigation, Star's claims adjuster did not talk to Gibson about the choice of "Closest National Hourly Weather Station."  We find that, with regard to the lying exception and improper investigation, Williams's arguments are meritless.  "Any plaintiff asking for punitive damages, or any special or extraordinary damages based upon `bad faith' of an insurance company has a heavy burden."  Hans Const. Co., Inc. v. Drummond, 653 So. 2d 253, 263 (Miss. 1995).  There must be a finding of an independent tort--a finding of "bad faith-plus" before punitive damages may be awarded.  Andrew Jackson, 566 So. 2d at 1188.  Ordinary torts do not rise to the "heightened level of an independent tort."  Id. at 1186 (quoting State Farm Fire & Casualty Co. v. Simpson, 477 So. 2d 242, 250 (Miss. 1985)).  Although the Defendants may have made mistakes in handling Williams's coverage, there is no indication that the Defendants or any of their employees deliberately made any misrepresentations.  The district court determined, in particular, that there was no indication that Gibson acted in a fraudulent or misleading manner.

---

[9]    In addition to "Closest National Hourly Weather Station," the only option offered on the insurance application in regard to a recording location was "Independent Weather Observer on Location."  As to this option the application noted, "Independent Weather Observers are available on request at least 14 days prior to the event if you do not have access to a qualified Independent Weather Observer."  Williams submitted his application for a quote on May, 26, 1992--less than fourteen days before the concert, which was scheduled for June 7, 1992.

15

Furthermore, the investigation conducted by Star was not so cursory as to rise to the level of gross or willful wrongdoing. "[T]he mere fact that an investigation of a claim is deficient or incompetent is not sufficient to establish malice, gross negligence, or reckless disregard of the rights of the insured." Guy, 894 F.2d at 1413 (citing Fedders Corp. v. Boatright, 493 So. 2d 301, 312 (Miss. 1986); Bellefonte Ins. Co. v. Griffin, 358 So. 2d 387, 391 (Miss. 1978)). In the instant case, the Defendants could have handled Williams's insurance coverage with more insight and skill--both at the application stage and the investigation stage. "The totality of the circumstances, however, does not suggest more than an unfortunate episode of a failure of competence." Veasley, 610 So. 2d at 294 (holding that insurer's denial of life insurance claim was result of mistake and did not rise to level of gross negligence so as to justify punitive damages award).

Finally, Williams acknowledged that he never read the completed insurance application before he submitted it to Worldwide.[10] "Under Mississippi law, unless a party was induced not to read the contract or have it read to him by fraudulent representations made by another party, he will be required to abide by its terms." Pedersen v. Chrysler Life Ins. Co., 677 F. Supp. 472, 475 (N.D. Miss. 1988). "A person is under an obligation to read a contract before signing it, and will not as

---

[10]     Williams also testified that he did not read any of the contracts he entered into with the entertainers scheduled to perform at his Kickapoo Park concert.

16

a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract." Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co., Inc., 584 So. 2d 1254, 1257 (Miss. 1991). We conclude that the lying exception does not apply to this case--nor does the improper investigation exception or any of the other exceptions to the arguable basis rule. Viewing the trial record in the light most favorable to Williams and drawing all inferences in his favor, we find that the conduct of the Defendants in denying Williams's rain insurance claim did not justify submitting the issues of extra-contractual and punitive damages to the jury.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.