IRVING, J.,
for the Court:
¶ 1. Sherronda Gilbert appeals from an order, entered by the Circuit Court of Coahoma County, granting summary judgment in favor of Infinity Insurance on her claim for punitive damages arising out of the failure of Infinity to timely pay a vehicle damage claim. She presents the following assignment of error which is taken verbatim from her brief:
Did the trial court err in granting Defendant’s Motion for Summary Judgment in light of its finding of disputed facts as to Defendant’s lack of an arguable reason,
Defendant’s reliance upon “receipt” rather than “sent,” and Defendant’s failure to request Plaintiffs checkbook during its initial investigation?
Finding no reversible error, we affirm.
FACTS
¶ 2. On March 14, 1997, Gilbert obtained an automobile insurance policy from Infinity Insurance Company which ran from March 14, 1997 to March 14, 1998. On February 11, 1998, Infinity sent a renewal offer to Gilbert stating that the policy would expire on March 14, 1998, unless the renewal premium was paid. Gilbert admits receiving this notice. On March 2, 1998, Infinity sent a renewal reminder notice to Gilbert reminding her that the renewal notice had been sent and that her policy would expire on March 14, 1998, *268 unless she paid the renewal premium. Gilbert admitted that she received the reminder notice. Infinity never received the renewal premium.
¶ 3. On March 21, 1998, Gilbert was involved in a one car accident that totaled her car. Gilbert filed a claim for benefits with Infinity. Infinity’s initial response was that the policy had lapsed due to nonpayment of the renewal premium. On April 2, Infinity spoke by telephone with the agent who wrote the policy and verified that Gilbert had not renewed the policy through the local agency. The agent knew Gilbert, and, after receiving the inquiry from Infinity, called Gilbert about the nonpayment of the premium. Gilbert informed the agent that she had mailed the payment on March 7. The agent immediately conveyed this information by telephone to Infinity.
¶4. Upon receipt of the information from the agent, a representative of Infinity called Gilbert, and Gilbert related the same information to the representative. On the same day, April 2, Infinity wrote Gilbert explaining that a coverage question existed. The coverage question concerned the expiration of Gilbert’s policy on March 14, 1998. In response to Infinity’s April 2 letter, Gilbert wrote Infinity on April 14, 1998, advising that she had sent her premium and expected benefits.
¶ 5. On May 15, Infinity wrote Gilbert again explaining the existence of a coverage question. On June 3, Infinity wrote Gilbert, explaining that it had conferred with her bank, and, according to the bank, the check Gilbert claimed to have sent had never cleared the bank. Further, Infinity had never received that payment. In this letter, Infinity requested that Gilbert contact it if her records reflected that payment had been made. In response, Gilbert sent a letter on June 8, 1998, forwarding a damage estimate and requesting coverage.
¶ 6. On June 17, 1998, Gilbert filed suit against Infinity for compensatory and punitive damages. Infinity answered the complaint and propounded interrogatories and requests for production of documents. Included in those requests for production of documents was a request for “all documents, including, but not limited to, statements, deposit slips, withdrawal slips, check stubs, check registers or overdraft notice which pertained to any of the accounts ...” in which the plaintiff claims to have tendered payment. Gilbert’s,, response included a near-illegible copy of her check register. Infinity then asked to view the original of the check register and any other documentation tending to support Gilbert’s claim. The originals were supplied by Gilbert and inspected by Infinity.
¶ 7. After inspecting the originals, Infinity concluded that the documentation supported Gilbert’s contention that, on March 7, she had used and mailed check number 101 in payment of the renewal premium. This conclusion was reached because her bank statement showed that checks numbered 102 and higher cleared the bank beginning on March 12 and that, at all relevant times, sufficient money was in the account to cover the amount of the renewal premium. Two days after inspecting the originals, Infinity informed Gilbert’s counsel that Infinity would extend coverage for the actual cash value of Gilbert’s automobile, minus her deductible. That amount was subsequently paid, thereby settling all of Gilbert’s claims except the claim for punitive damages which is the subject of this appeal.
ANALYSIS OF ISSUE PRESENTED

Did the trial court err in granting summary judgment rather than submitting the issue of punitive damages to a jury?

¶ 8. The trial court is responsible for reviewing all evidence before it in order to ascertain whether the jury should be permitted to decide the issue of punitive damages. On appeal, this Court will review the briefs and all the recorded evidence in order to determine the propriety *269 of the trial judge’s decision regarding submission of the issue to the jury. Caldwell v. Alfa Insurance Co., 686 So.2d 1092, 1096 (Miss.1996).
¶ 9. Gilbert contends that it was improper for the trial court to grant summary judgment based on a finding by the trial court that Infinity conducted an adequate investigation. It is Gilbert’s contention that the question of adequacy of the investigation was a question for the jury. If the question of the adequacy of the investigation involved a consideration of simple negligence, Gilbert would have a point. But here, she is seeking to recover punitive damages on a theory of bad faith arising out of Infinity’s failure to timely pay the damage claim for the loss of her vehicle.
¶ 10. Punitive damages may be awarded against an insurance company in a breach-of-contraet-bad-faith claim if the insurance company denies the claim without conducting a proper investigation, for “an insurance company has a duty to the insured to make a reasonably prompt investigation of all relevant facts.” Bankers Life & Cas. Co. v. Crenshaw, 483 So.2d 254, 276 (Miss.1985); see also, Lewis v. Equity Nat’l Life Ins. Co., 637 So.2d 183, 187 (Miss.1994). However, it is the prerogative of the trial judge to determine if the issue of punitive damages should be considered by the jury. See Universal Life Ins. Co. v. Veasley, 610 So.2d 290, 293 (Miss.1992). In the case sub judice, the trial judge concluded that Infinity conducted an adequate investigation into Gilbert’s claim and, distinguishing Lewis, held that summary judgment in favor of Infinity was proper.
¶ 11. In Lewis, the Mississippi Supreme Court instructed that:
In those cases where there is a question that the mishandling of a claim or the breach of an implied covenant of good faith and fair dealing may have reached the level of an independent tort — despite the possibility of an arguable basis for denying the claim, the Williams court outlined the following procedure:
(1) the issue should be submitted to the jury for resolution; and (2) if the jury resolves the issue against the insurer; (3) the trial judge may upon post-verdict motion and upon reflection find:. (a) that the evidence is not supportive of the verdict; (b) that issue should not have been submitted to the jury; and (c) that j.n.o.v. [sic] or a new trial should be granted.
Lewis, 637 So.2d at 185 (quoting Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172 (Miss.1990)).
¶ 12. While Lewis does hold that the question of the adequacy of an insurance company’s investigation should be submitted to a jury, it limits those circumstances to cases where there is a question that the mishandling of a claim or the breach of an implied covenant of good faith and fair dealing may have reached the level of an independent tort. In our case, the trial judge made the following ruling:
This Court finds the present case is distinguishable from Leivis. Plaintiffs argument focuses on “sent” versus “received,” and inadequate investigation. Plaintiffs remaining arguments pertain to a continued refusal by Defendant to acknowledge that payment was properly due the Plaintiff and Defendant’s refusal to acknowledge its failure to conduct a good faith investigation. Having found that the Defendant’s investigation consisted of inquiries of its agents, Plaintiff and Plaintiffs bank, the Court finds that Defendant’s investigation was proper and adequate. Additionally, the Court responds to Plaintiffs claim that Defendant’s refusal to admit denial was improper constitutes gross negligence or reckless disregard of the Plaintiffs rights as an insured. The Court finds no evidence is produced by the Plaintiff to support a question of material fact with regard to the question of punitive damages. Consequently, no question of misconduct justifying punitive damages remains for a jury .... the Court finds *270 that the Defendant’s conduct does not amount to an independent tort. The Court also finds that the Defendant conducted a proper and adequate investigation.
We do not find fault with the trial judge’s ruling. The facts of our case are quite different from those in Lewis.
¶ 13. The Lewis facts are these. On April 18, 1989, Ron Farmer, an agent for Equity National Life Insurance Co., sold Mrs. Florence Lewis an individual hospital intensive care policy which provided benefits of $200 per day. She was charged a $3 monthly premium, which she paid by bank draft. Lewis, 637 So.2d at 184.
¶ 14. On March 3, 1990, Mrs. Lewis was injured in an automobile accident and spent one night in the intensive care unit of Baptist Memorial Hospital North in Oxford, Mississippi. The hospital completed and sent a UB-82 form ( a unified billing form used by larger hospitals to report claims) to Equity National, which the insurer received on May 21,1990. Id.
¶ 15. On July 23,1990, Mrs. Lewis wrote to Equity National to determine the status of her claim. The insurer responded by sending her a claimant’s form and attending physician’s statement on August 24, 1990. Mrs. Lewis completed the claimant’s statement on September 12, 1990, indicating that she had not been “treated for, or diagnosed as having had a heart attack, heart trouble, or any other abnormal condition of the heart prior to the effective date of this policy.” She testified that she answered the question negatively because two specialists had confirmed that there was no damage to her heart and, moreover, the injuries suffered in the accident were totally unrelated to the condition of her heart. Dr. Michael L. King, who treated Mrs. Lewis’s injuries, completed the attending physician’s statement on September 24, 1990. He indicated that Mrs. Lewis had been treated for an “oceu-lusion [sic] of the left coronary artery” in 1983. Id.
¶ 16. On November 28, 1990, eight and one-half months after the claim was filed, Equity National wrote to Mrs. Lewis, informing her that its investigation was complete. The letter stated that because the insurer had learned that Mrs. Lewis was diagnosed with a heart condition prior to the issuance of the policy, the policy would be rescinded. A check for $57, which Mrs. Lewis had paid in premiums, was enclosed. Id.
¶ 17. Mrs. Lewis filed suit against Equity National and Ron Farmer on January 17, 1991. She sought both compensatory and punitive damages. Equity National denied the allegations and raised the affirmative defense that Mrs. Lewis had made a material misrepresentation on her application, thus entitling it to rescind the policy pursuant to Miss.Code Ann. § 83-9-11(3). Lewis, 637 So.2d at 185.
¶ 18. Mrs. Lewis testified that, when Farmer solicited the policy, she had told him that she was a diabetic and had had heart problems in 1983. She stated that she had given him the names of the physicians who had treated her, including Dr. J.S. Purdon who, in 1988, told her that her heart was “fine.” She indicated that Farmer did not ask her any questions about her medical history while he filled out the policy application. Although she signed the application, she apparently did not read it. Id. at 184.
¶ 19. When Equity National initially questioned Farmer about Mrs. Lewis’s application, after the suit was filed in January 1991, he indicated that he had asked her the medical questions on the application and that she did not advise him of any prior heart problems. He acknowledged that he had no real memory of writing the policy but assumed he had asked her the usual questions. He did recall that when asked, she denied having any heart problems. Id.
¶ 20. Equity National’s decision to rescind the policy was based solely on the information provided in Dr. King’s statement. No further investigation was un *271 dertaken beyond obtaining the claim form and submitting it to the underwriting department. No inquiries were made either to Farmer or Mrs. Lewis’s physicians. Moreover, the insurer neither requested nor received any records pertaining to Mrs. Lewis’s injuries or her alleged heart condition. Id. at 185.
¶ 21. Equity National and Farmer filed a motion for summary judgment, or in the alternative, a motion for partial summary judgment on the issue of punitive damages, based on the insurer’s contention that it had an arguable reason to rescind the policy. The circuit court, finding that Equity National had an arguable basis for denying Mrs. Lewis’s claim and that there was nothing to indicate that the insurer acted out of malice, gross negligence, or with wanton or reckless disregard for the claimant’s rights, granted Equity National’s motion for partial summary judgment on the issue of punitive damages. Lewis, 637 So.2d at 185.
¶ 22. On appeal, the Mississippi Supreme Court was asked to determine whether the issue of punitive damages should have been presented to the jury. In reversing the lower court’s grant of summary judgment, the Mississippi Supreme Court held as follows:
In Bankers Life & Casualty Company v. Crenshaw, 483 So.2d 254 (Miss.1985), we established that the denial of a claim without proper investigation may give rise to punitive damages. Id. at 276. We recognized that “an insurance company has a duty to the insured to make a reasonably prompt investigation of all relevant facts.” Id. See also, Life and Casualty Insurance Co. of Tennessee v. Bristow, 529 So.2d 620, 623-624 (Miss.1988). Proper investigation, the Cren-shaw Court held, means obtaining “all available medical information relevant to [the policyholder’s] claim.” Id. at 272. In Eichenseer v. Reserve Life Insurance Co., 682 F.Supp. 1355, 1366 (N.D.Miss.1988), the court found that under Mississippi law, before denying a claim, the insurer, at a minimum, must determine whether the policy provision at issue has been voided by a state or federal court, interview its agents and employees to determine if they have knowledge relevant to the claim, and make a reasonable effort to secure all medical records relevant to the claim. Id. at 1366. In the case sub judice, Equity National did not even undertake minimal inquiry into Mrs. Lewis’ claim. Ron Farmer, the agent, was not questioned about the claim until after the lawsuit was filed in January 1991. Equity National admits that it neither made an investigation nor requested any medical information regarding Mrs. Lewis’ claim or policy application. This evidence suggests that there exist questions of fact regarding the adequacy of Equity National’s investigation of Mrs. Lewis’s claim which should have been considered by a jury.
Id. at 187.
¶ 23. Lewis is distinguishable from the case at bar. In our case, Infinity’s investigation included (1) speaking with the agency that wrote the policy to see if payment had been made at the local level, (2) speaking with Gilbert to ascertain information regarding when the payment was sent, and (3) inquiring at Gilbert’s bank to determine if the check had cleared the bank. In this case where the payment of Gilbert’s claim was not immediately paid due to the apparent lapse of her policy for non-payment of the premium, it is difficult to perceive any additional investigation that Infinity might have conducted.
¶ 24. Gilbert points out that Infinity was never willing to concede that payment had been sent. On these facts, we cannot fault Infinity or assign any improper motive to it for refusing to accede to Gilbert’s demand for payment of the claim. It is true that Infinity paid the claim after inspecting Gilbert’s check register and ascertaining that Gilbert had enough money in her bank account at the relevant time to cover .the check which she contended had been mailed to Infinity on March 7, but the *272 information provided did not prove that the payment had in fact been mailed. Even after receiving this information, Infinity could have withheld payment without being guilty of bad faith.
¶25. It is our understanding from the record that the check allegedly sent by Gilbert still has not been received by Infinity. We agree that non-receipt by Infinity does not mean that Gilbert did not mail the payment, but by the same token, Infinity’s refusal to pay the claim because of non-receipt of the premium was entirely reasonable. We cannot say that there was a question regarding the mishandling of Gilbert’s claim or that Infinity breached the implied covenant of good faith and fair dealing. Consequently, we conclude that Infinity’s actions in this matter fell far short of approaching the level of an independent tort which is required by Lewis before the question of the adequacy of an investigation may be presented to the jury in the punitive damage context. Therefore, we affirm the trial judge’s decision to not allow the jury to consider the issue of punitive damages.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY GRANTING SUMMARY JUDGMENT TO THE APPELLEE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.